IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | | |
|---|---|---|
| POLYZEN, INC., | ) | |
| | ) | |
|     Plaintiff and Consolidated Defendant, | ) | |
| | ) | |
| v. | ) | 5:11-CV-662-D (Lead Case) |
| | ) | 5:12-CV-102-D |
| RADIADYNE, L.L.C., | ) | |
| | ) | |
|     Defendant and Consolidated Plaintiff. | ) | |

**MEMORANDUM AND RECOMMENDATION**

This consolidated case comes before the court on the motion (D.E. 20)[1] by RadiaDyne, L.L.C. ("RadiaDyne") to correct inventorship on a disputed patent pursuant to 35 U.S.C. § 256 ("§ 256") and to dismiss the complaint filed by Polyzen, Inc. ("Polyzen") for lack of standing pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Polyzen opposes the motion. The motion has been fully briefed,[2] and was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B). (See 1 May 2012 Order (D.E. 23)). For the reasons set forth below, it will be recommended that the motion be denied without prejudice.

**BACKGROUND**

**I.** *Polyzen, Inc. v. RadiaDyne, L.L.C.*, **No. 5:11-CV-662-D**

On 21 November 2011, Polyzen filed a complaint against RadiaDyne in Case No. 5:11-CV-662-D. (*See* Polyzen Compl. (D.E. 1)). In the complaint, Polyzen asserts a claim for patent

---

[1] Unless otherwise specified, all references to docket entries will be to those in the lead case, no. 5:11-CV-662-D. Docket entries in the other consolidated case, no. 5:12-CV-102-D, are denoted "RadiaDyne D.E. __."

[2] In support of the motion, RadiaDyne filed a memorandum (D.E. 10-1) with exhibits (D.E. 10-3 through 10-8) and the affidavit of John Isham (D.E. 10-2). Polyzen filed a memorandum in opposition (D.E. 17) with exhibits (D.E. 17-1 through 17-13) and declarations from Steven Hultquist (D.E. 17-14), Tilak M. Shah (D.E. 17-15), and Christopher David Strom (D.E. 17-16). RadiaDyne filed a reply (D.E. 19) with exhibits (D.E. 19-1 through 19-5).

infringement under 35 U.S.C. § 271 alleging that RadiaDyne has infringed and continues to infringe the claims of United States Patent No. 7,976,497 ("the '497 patent") (D.E. 17-8) for a multi-layer film welded articulated balloon (Polyzen Compl. ¶ 16) ("the device"), which is a medical balloon device designed to position the prostate during radiation therapy (*see* RadiaDyne Memo. 1). Polyzen alleges that it is the sole assignee of the '497 patent pursuant to an assignment recorded on 25 September 2008 (Polyzen Compl. ¶ 9) and that RadiaDyne manufactures and sells a device that infringes on claims 1 through 5 of the '497 patent (*Id*. ¶¶ 15, 17).

The relief sought by Polyzen includes: a declaratory judgment holding that the '497 patent is infringed by RadiaDyne and that such infringement is willful; a preliminary injunction preventing RadiaDyne from manufacturing and selling infringing products, and impounding any infringing device during the pendency of this action; actual damages, including royalties, profits, gain, or advantages resulting from infringement or other violations of law; trebling of compensatory damages; costs, including reasonable attorneys' fees; and other relief. (Polyzen Compl. 5-6, Prayer for Relief ¶¶ A through J). In lieu of an answer to Polyzen's complaint, RadiaDyne filed on 13 December 2011 the motion now before the court.

## II.     *RadiaDyne, L.L.C. v. Polyzen, Inc.*, No. 5:12-CV-102-D

On 23 December 2011, approximately one month after Polyzen filed its action in this district, RadiaDyne filed a case against Polyzen in the Southern District of Texas (*see* RadiaDyne Compl. (RadiaDyne D.E. 1)) asserting claims for fraud (*id*. ¶¶ 38-47); breach of contract (*id*. ¶¶ 48-52); unfair competition under the Lanham Act, 15 U.S.C. §1125(a) (*id*. ¶¶ 53-56); conversion (*id*. ¶¶ 57-60); and trespass to chattels (*id*. ¶¶ 61-62). In its claim for fraud, RadiaDyne alleges that Polyzen: (1) misrepresented that it did not sell products directly to

physicians but only to medical device companies such as RadiaDyne (*id*. ¶ 40); (2) misrepresented that it intended to honor RadiaDyne's intellectual property rights (*id*. ¶ 41); and (3) failed to disclose to RadiaDyne that it intended to misappropriate RadiaDyne's intellectual property by filing a patent application regarding the disputed device (*id*. ¶¶ 42, 43).

RadiaDyne's claim for breach of contract relates to the parties' "Development and Commercialization Agreement," which documented their prior agreements, defined their future expectations, and addressed the parties' respective intellectual property rights. (*Id*. ¶ 24). RadiaDyne alleges that Polyzen breached this agreement by failing to set a reasonable transfer price on the devices manufactured for RadiaDyne, filing patent applications for RadiaDyne's intellectual property, and refusing to return equipment used in manufacturing RadiaDyne's devices. (*Id*. ¶¶ 50, 52). RadiaDyne's Lanham Act claim is based on the allegations that Polyzen engaged in false and misleading conduct that suggested to the public that it developed and owned devices actually owned by RadiaDyne. (*Id*. ¶ 54). RadiaDyne's claims for conversion and trespass to chattels arise from allegations that Polyzen refuses to return manufacturing equipment that belongs to RadiaDyne. (*Id*. ¶¶ 58, 59, 62). On its various claims, RadiaDyne seeks injunctive relief; compensatory damages; punitive damages; costs, including attorneys' fees; and other relief. (*Id.* 13-14, Prayer for Relief ¶¶ a through j).

On the motion of Polyzen, the Southern District of Texas transferred RadiaDyne's case to this district on 24 February 2012. (RadiaDyne D.E. 10). On 22 June 2012, RadiaDyne filed a motion to consolidate its case with Polyzen's case. (RadiaDyne D.E. 24). The motion was allowed and the two cases were consolidated on 2 July 2012 (RadiaDyne D.E. 29).

3

**III.    RadiaDyne's Motion**

In its motion, RadiaDyne seeks correction of the '497 patent pursuant to § 256 by adding as a co-inventor John Isham ("Isham"), the founder and president of RadiaDyne.  RadiaDyne argues that Isham and individuals working for Polyzen jointly invented the device, but that Polyzen filed for and received the '497 patent without the knowledge of Isham or RadiaDyne and without including Isham as an inventor on the patent application.[3]  RadiaDyne also seeks dismissal under Rule 12(b)(1) on the grounds that correction of the patent would deprive Polyzen of standing because all the owners of a patent must consent to a suit for its infringement and RadiaDyne, to whom Isham has purportedly assigned his interest in the patent, does not consent.  Thus, a determination of Polyzen's standing to bring its infringement action turns on whether the '497 patent is subject to correction of inventorship to add Isham as an inventor.

## APPLICABLE LEGAL PRINCIPLES

**I.    Correction of Inventorship under § 256**

**A.    Correction Authority**

Under 35 U.S.C. § 116, a patent application must include the names of all inventors, and the issuance of a patent "creates a presumption that the named inventors are the true and only inventors." *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1460 (Fed. Cir. 1998); *Armor Screen Corp. v. Storm Catcher, Inc.*, No. 07-81091-Civ, 2008 WL 5746938, at *8 (S.D. Fla. 10 Nov. 2008) (quoting *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1358 (Fed. Cir. 2004)).  However, where a patent erroneously names persons who were not inventors (*i.e.*, misjoinder) or omits persons who were (*i.e.*, nonjoinder), § 256 provides two methods for correction:  (1) the Director of the United States Patent and Trademark Office may correct the patent upon

---

[3] The '497 patent lists "Tilak M. Shah, Cary, NC (US)" and "Christopher D. Strom, Cary, NC (US)" as the inventors.  (*See* '497 patent (D.E. 17-8) at 1).  Shah is the founder and president of Polyzen (*see* RadiaDyne Compl. ¶¶ 3, 17) and Strom is an engineer employed by Polyzen  (*see* RadiaDyne Compl. ¶ 19).

4

application of all parties and assignees; or (2) "[t]he court before which such matter is called in question may order correction of the patent on notice and hearing of all parties concerned." 35 U.S.C. § 256[4]; *see also Ethicon,* 135 F.3d at 1461 (holding that pursuant to § 256 a court may add a co-inventor omitted from an issued patent and affirming district court's correction of inventorship in a patent infringement case).

The omission of an inventor is an error that comes within the scope of § 256 only if it "arose without any deceptive intention on [the omitted inventor's] part." 35 U.S.C. § 256. Thus, the omitted inventor "must not have engaged in any deception related to the nonjoinder." *Stark v. Advanced Magnetics, Inc.*, 119 F.3d 1551, 1554 (Fed. Cir. 1997). It is not essential that the named inventors also acted without deceptive intent. *Id.* at 1556.

### B. Jurisdiction

For the court to have subject matter jurisdiction over an action for correction, § 256 requires only notice and an opportunity for all parties to be heard. *Stark, 119 F.3d at* 1553 (citing *Iowa State Univ. Research Found., Inc. v. Sperry Rand Corp.*, 444 F.2d 406, 410 (4th Cir. 1971)). It is not essential that all inventors and assignees agree, as in proceedings before the Director. *See* 35 U.S.C. § 256.

An additional requirement for subject matter jurisdiction, as in cases generally, is that of standing grounded in article III of the United States Constitution. "'[T]he doctrine of standing

---

[4] Section 256 reads as follows:

> Whenever through error a person is named in an issued patent as the inventor, or through error an inventor is not named in an issued patent and such error arose without any deceptive intention on his part, the Director may, on application of all the parties and assignees, with proof of the facts and such other requirements as may be imposed, issue a certificate correcting such error.
>
> The error of omitting inventors or naming persons who are not inventors shall not invalidate the patent in which such error occurred if it can be corrected as provided in this section. The court before which such matter is called in question may order correction of the patent on notice and hearing of all parties concerned and the Director shall issue a certificate accordingly.

35 U.S.C. § 256.

serves to identify those disputes which are appropriately resolved through the judicial process,' and thus meet the requirements of Article III." *Bishop v. Bartlett*, 575 F.3d 419, 423 (4th Cir. 2009) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 154-55 (1990)). To establish standing, a party seeking relief from the court has the burden to show: "'(1) he has suffered an injury in fact; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Emery v. Roanoke City School Bd.*, 432 F.3d 294, 298 (4th Cir. 2005) (quoting *Friends for Ferrell Parkway, LLC v. Stasko*, 282 F.3d 315, 320 (4th Cir. 2002)); *see also Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006) ("The party attempting to invoke federal jurisdiction bears the burden of establishing standing.").

The standing requirement specific to a party seeking correction of inventorship under § 256 requires the party seeking correction to demonstrate "either expected ownership rights in the patent at issue or a 'concrete financial interest in the patent, albeit an interest less than ownership.'" *Informatics Applications Group, Inc. v. Shkolnikov*, 836 F. Supp. 2d 400, 411 (E.D. Va. 2011) (quoting *Chou v. Univ. of Chicago*, 254 F.3d 1347, 1357 (Fed. Cir. 2001)). Such parties could include a putative inventor, an assignee of the inventor,[5] or a patentee. *Armor Screen*, 2008 WL 5746938, at *10.

### C. Burden of Proof

To establish inventorship, the omitted inventor must rebut by clear and convincing evidence the presumption that the named inventors on the patent are the true and only inventors. *Finkelstein v. Mardkha*, 495 F. Supp. 2d 329, 337 (S.D.N.Y. 2007). There must be evidence corroborating the omitted inventor's testimony. *Id.* "Corroborating evidence may take many forms, including contemporaneous documentary or physical evidence, oral testimony of others,

---

[5] Pursuant to 35 U.S.C. § 151, patents may be granted to the assignee of the inventor.

6

and circumstantial evidence." *Id*. The court must determine if the evidence presented is sufficiently corroborated under a "rule of reason" analysis "whereby the Court views all evidence before it in making a sound determination as to the credibility of the claimed inventor's story." *Id*.

## II. Standard for Inventorship

"Conception is the touchstone of inventorship, the completion of the mental part of invention." *Burroughs Wellcome Co. v. Barr Lab., Inc.,* 40 F.3d 1223, 1227-28 (Fed. Cir. 1994). "It is 'the formation in the mind of the inventor, of a definite and permanent idea of the complete and operative invention, as it is hereafter to be applied in practice.'" *Id*. (quoting *Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1376 (Fed. Cir. 1986). "Conception is complete only when the idea is so clearly defined in the inventor's mind that only ordinary skill would be necessary to reduce the invention to practice, without extensive research or experimentation." *Id*. (citing *Sewall v. Walters*, 21 F.3d 411, 415 (Fed. Cir. 1994)).

"[A] patented invention may be the work of two or more joint inventors." *Ethicon*, 135 F.3d at 1461 (citing 35 U.S.C. § 116). "To be a joint inventor, an individual must make a contribution to the conception of the claimed invention that is not insignificant in quality, when that contribution is measured against the dimension of the full invention." *Fina Oil and Chem. Co. v. Ewen*, 123 F.3d 1466, 1473 (Fed. Cir. 1997). "A claimed inventor need not make the same type or amount of contribution as the named inventor, nor 'make a contribution to every claim of a patent. A contribution to one claim is enough.'" *Finkelstein*, 495 F. Supp. 2d at 337-38 (quoting *Ethicon, Inc.,* 135 F.3d at 1460).

A person does not become a co-inventor by doing "nothing more than explaining to the inventors what the then state of the art was and supplying a product to them for use in their

7

invention." *Hess v. Advanced Cardiovascular Sys., Inc.*, 106 F.3d 976, 980, 981 (Fed. Cir. 1997). "Nor does exercising ordinary skill in the art to reduce an idea to practice make one a co-inventor." *Finkelstein*, 495 F. Supp. 2d at 338. *Sewall*, 21 F.3d at 416. "An inventor 'may use the services, ideas, and aid of others in the process of perfecting his invention without losing his right to a patent.'" *Shatterproof Glass Corp. v. Libbey-Owens Ford Co.*, 758 F.2d 613, 624 (Fed. Cir. 1985) (quoting *Hobbs v. U.S. Atomic Energy Comm.*, 451 F.2d 849, 864 (5th Cir. 1971)).

## III. Standing to Bring a Patent Infringement Action

It is well settled that all co-owners of a patent must be joined as plaintiffs to establish standing for an infringement suit involving that patent. *See Ethicon*, 135 F.3d at 1468. Because all co-owners generally[6] must consent to join as plaintiffs in an infringement suit, "one co-owner has the right to impede the other co-owner's ability to sue infringers by refusing to voluntarily join in such a suit." *Id*. Thus, when a co-inventor refuses to join in a patent suit, the suit must be dismissed. *Id*. at 1468; *see also Israel Bio-Eng'g Project v. Amgen, Inc.*, 475 F.3d 1256, 1264-65 (Fed. Cir. 2007) ("Absent the voluntary joinder of all co-owners of a patent, a co-owner acting alone will lack standing."); *Bushberger v. Protecto Wrap Co.*, No. 07-CV-8, 2008 WL 725189, at *5 (E.D. Wis. 17 Mar. 2008) ("Without complete ownership interest of the patents or the voluntary joinder of [a co-owner], [the other co-owner] lacks standing to sue for infringement.").

---

[6] There are two exceptions to this requirement, which are not applicable here. These exceptions were explained by the Federal Circuit in *Ethicon* as follows:

> First, when any patent owner has granted an exclusive license, he stands in a relationship of trust to his licensee and must permit the licensee to sue in his name. Second, the obligation may arise by contract among co-owners. If, by agreement, a co-owner waives his right to refuse to join suit, his co-owners may subsequently force him to join in a suit against infringers.

*Ethicon*, 135 F.3d at 1468 n.9 (internal citations omitted). Neither party has alleged circumstances that would suggest that either of these exceptions are applicable in this case.

## ANALYSIS

I.   **Procedural Propriety of RadiaDyne's Motion**

Polyzen advances a barrage of arguments that RadiaDyne's motion is not properly before the court and should be denied without consideration of it on the merits. All of Polyzen's arguments are baseless.

Polyzen contends, for instance, that RadiaDyne cannot properly seek substantive relief from the court—correction of the patent[7]—while simultaneously challenging the court's subject matter jurisdiction. The Federal Civil Rules, though, clearly permit a defendant to pursue as many separate defenses as it has, regardless of consistency. *See* Fed. R. Civ. P. 8(d)(3) ("A party may state [in a pleading] as many separate claims or defenses as it has, regardless of consistency."); *see also* Fed. R. Civ. P. 12(b) ("No defense or objection is waived by joining it with one or more other defenses or objections . . . in a motion."). Moreover, the relief RadiaDyne seeks is not simultaneous in nature, but sequential. As indicated, the motion seeks, first, correction of the '497 patent and, then, dismissal of the action for lack of subject matter jurisdiction. RadiaDyne could have filed a motion for correction and then waited to file a dismissal motion, assuming the correction motion was granted, but requiring RadiaDyne to file two motions, rather than one, would mandate a needless inefficiency.

Polyzen also appears to argue that RadiaDyne's request for correction cannot properly be asserted by motion and instead must be raised in a counterclaim. But § 256 states simply that a

---

[7] Polyzen mischaracterizes RadiaDyne's request for correction as seeking "equitable relief and specific performance." (Resp. 1). In fact, of course, the correction remedy is a statutory one. Polyzen also repeatedly misidentifies RadiaDyne's motion as one for summary judgment. (*See* Resp. at 1, 3, 4, 13, 16 ("RadiaDyne's motion is a motion for summary judgement [sic]."), 17, 18). Assuming, because it is far from clear, that Polyzen is arguing that RadiaDyne's reliance on evidence outside of the pleadings in support of the portion of its motion under Rule 12(b)(1) converts it into one for summary judgment, Polyzen is again misguided. Where, as here, a Rule 12(b)(1) motion attacks the factual basis for jurisdiction, the district court "may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R. Co.*, 945 F.2d 765, 768 (4th Cir. 1991); *see also Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999) (non-conversion of motion).

party may seek correction of inventorship in "[t]he court before which such matter is called in question." 35 U.S.C. § 256. There is no requirement that this issue be raised in any particular form. Further, Polyzen has not cited to, nor does the court find, any authority for its contention that assertion of the request for correction of inventorship must be made by a counterclaim. Courts have routinely entertained on the merits requests for correction of inventorship asserted as motions. *See, e.g.*, *Ethicon*, 135 F.3d at 1458-59 (affirming district court's determination of inventorship under § 256 in response to defendant-intervener's motion to correct filed in an infringement action); *Manildra Mill. Corp. v. Ogilvie Mills, Inc.*, Nos. 92-1462, 92-1480, 1993 WL 217173, at * 9 (Fed. Cir. 22 June 1993) (remanding case for further ruling on defendant's motion to correct inventorship under § 256 in an infringement action); *Armor Screen*, 2008 WL 5746938, at *1 (denying on merits motion to correct inventorship filed by defendant in response to plaintiff's infringement action).

Polyzen also seems to argue that RadiaDyne's motion to dismiss under Rule 12(b)(1) is not proper until RadiaDyne files its answer to the complaint. The court invites Polyzen to revisit Rule 12(b), which states expressly that "[a] motion asserting any of these defenses [including lack of subject matter jurisdiction] must be made before pleading if a responsive pleading is allowed," as here. Fed. R. Civ. P. 12(b).

Polyzen contends that RadiaDyne's dismissal motion is "misdirected" because 28 U.S.C. § 1338(a) expressly confers on district courts subject matter jurisdiction over patent cases and that RadiaDyne has "confus[e]d an alleged, potential lack of standing with subject matter jurisdiction." (Resp. 1, 2). It is, of course, hornbook law that standing "is a fundamental component of a court's subject-matter jurisdiction." *Dash*, 248 F. Supp. 2d at 501. As reviewed above, standing relates to whether a particular party's claim satisfies the actual controversy

requirement in Article III, not the court's authority over a particular class of cases. Accordingly, motions challenging standing are appropriately brought pursuant to Rule 12(b)(1). *Id.*; *see also Tingley v. Beazer Homes Corp.*, No. 3:07cv176, 2008 WL 1902108, at *2 (W.D.N.C. 25 Apr. 2008) ("As standing is a fundamental component of a court's subject-matter jurisdiction, a defendant may properly challenge a plaintiff's standing by way of a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.") (citations and quotations omitted).

Polyzen also contends that, in essence, RadiaDyne lacks standing to seek patent correction under § 256 because it has not demonstrated that it has acquired Isham's putative ownership interest in the '497 patent. In fact, though, RadiaDyne submitted with its reply a copy of a notarized assignment dated 9 December 2011 in which Isham assigned all rights in the '497 patent to RadiaDyne. (*See* Reply, Ex. S (D.E. 19-5)). Accordingly, RadiaDyne has made a preliminary showing that it has standing to seek correction of the '497 patent under § 256. *See Armor Screen*, 2008 WL 5746938, at *10.

Polyzen further argues that "RadiaDyne has filed its Motion under the wrong rule because RadiaDyne wants to argue that the burden is on Polyzen to establish subject matter jurisdiction, when the burden is actually on RadiaDyne to establish the validity of an issued patent." (Resp. 16). Although the meaning of this statement is not entirely clear, to the extent that Polyzen is suggesting that it is RadiaDyne's burden to demonstrate standing with respect to the infringement action, Polyzen is again misguided. As noted earlier, it is a plaintiff's burden to demonstrate that it has standing to bring its action. *See Miller*, 462 F.3d at 316. Polyzen is correct that RadiaDyne will initially have the burden to prove that it is entitled to a correction of inventorship by clear and convincing evidence. *See Finkelstein*, 495 F. Supp. 2d at 337.

11

However, a demonstration that Isham is an inventor, thereby holding the presumptive ownership interest of an inventor, will have the effect of eliminating Polyzen's status as the sole owner of the '497 patent. And because all co-owners of a patent must consent to bring an infringement action, *see Ethicon*, 135 F.3d at 1468, the burden will then fall on Polyzen to demonstrate that its standing to maintain the infringement action remains intact. *See MHL TEK, LLC v. Nissan Motor Co.*, 655 F.3d 1266, 1274 (Fed. Cir. 2011) ("The party bringing the [infringement] action has the burden of establishing that it has standing to sue for infringement.).

## II.   Merits of RadiaDyne's Motion

Although the court has concluded that it may properly rule on the merits of RadiaDyne's motion, it finds that it should not do so at this time. Instead, the motion should be denied without prejudice to RadiaDyne's refiling it after completion of discovery.

One reason is that the factual record on the issue of inventorship is not well developed. No discovery has yet been conducted. As a result, for example, the parties necessarily rely on testimony in the form of affidavits and declarations as opposed to testimony subjected to cross-examination.

In addition, the factual and legal issues relating to inventorship would likely also arise in Polyzen's prosecution of the infringement action and in many of the potential defenses that RadiaDyne might assert against infringement. *See, e.g.*, 35 U.S.C. § 282 (listing the defenses in an action involving the validity or infringement of a patent that must be pleaded). For example, a detailed, and perhaps even expert, analysis of the various claims of the '497 patent will likely be necessary to address both Isham's alleged contributions to the claims as an inventor as well as the extent to which RadiaDyne's products allegedly infringe upon those claims.

Moreover, of course, Polyzen's infringement action is now consolidated with RadiaDyne's action. As stated in the consolidation order, the claims in the parties' respective complaints share common issues of both law and fact that warrant their proceeding in tandem. (2 July 2012 Order (D.E. 26) 1). These common issues include those presented by RadiaDyne's motion. For example, the factual details of Isham's collaboration with Polyzen on the device are relevant not only to the question of Isham's status as an inventor of the device, but also to RadiaDyne's claims of fraud and breach of contract which arise from that same collaboration.

To address the factual and legal issues as they relate to inventorship separate from Polyzen's infringement claim and the claims in RadiaDyne's complaint could result in duplicative and wasteful efforts. Courts have routinely deferred consideration of challenges to a patent's validity, including issues of inventorship, so that they can be addressed together with infringement or other patent-related claims. *See Rockwell Mfg. Co. v. Chicago Pneumatic Tool Co.*, No. 70 C 2027, 1972 WL 19328, at *1 (N.D. Ill. 25 Jan. 1972) (denying a request for a separate hearing for correction of inventorship under § 256 on the grounds that the court saw "no advantage in granting a separate hearing on the issue of nonjoinder or misjoinder [of inventors]; indeed, if such a hearing were granted, the parties might have to produce the same witnesses and evidence two different times"). The Federal Circuit has also specifically discouraged separate trials to address these issues where "the arguments against infringement are indistinguishably woven with the factual underpinnings of the validity and enforceability determinations and the subject matter of the [patent license] contract." *Witco Chem. Corp. v. Peachtree Doors, Inc.*, 787 F.2d 1545, 1549 (Fed. Cir. 1986) (vacating a judgment and remanding for a new trial where the trial court "[had] one jury return a verdict on the validity, enforceability and contract questions while leaving the infringement questions to a second jury").

Furthermore, resolution of the inventorship issue in RadiaDyne's favor and dismissal of Polyzen's infringement action, if they were to occur, would not completely dispose of this consolidated proceeding. RadiaDyne's own claims would still have to be litigated.

For the foregoing reasons, the court concludes that the issue of inventorship should be taken up in this case following the completion of discovery and further briefing of the issues in light of such discovery. As one court noted after reopening discovery on the issue of inventorship, following its earlier denial of defendant's motion for correction, "Our grant of [defendant's] motion to reopen discovery was based on the court's desire to have as much information as possible on the quality of the error in inventorship, an issue which clearly affects the validity of the patents at the heart of this case." *Manildra Milling Corp. v. Oglivie Mills, Inc.*, CIV. A. No. 86-2457-O, 1989 WL 115716, at *2 (D. Kan. 17 Sept. 1989) (accepting defendant's argument "that it was only after the court's ruling denying correction of inventorship that certain aspects of the potential error in inventorship became crucial to this case").

Deferral of the issue of inventorship would, of course, have the effect of deferring the issue of subject matter jurisdiction presented by respondent's motion. Such deferral of the jurisdictional issue is not improper. A court is not precluded from deferring a jurisdictional issue until later in the proceedings where, as here, the issue is intertwined with the merits of the case. *See United States v. North Carolina*, 180 F.3d 574, 580 (4th Cir. 1999) ("When a factual attack on subject matter jurisdiction involves the merits of a dispute, '[t]he proper course of action for the district court . . . is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case.'" (quoting *Garcia v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1261 (11th Cir. 1997)); *see also Israel Bio-Eng'g*, 475 F.3d at 1263 (noting that "there are

multiple ways to dispose of challenges to standing in the district court" including via summary judgment motion).

## **CONCLUSION**

For the foregoing reasons, IT IS RECOMMENDED that RadiaDyne's motion (D.E. 20) be DENIED WITHOUT PREJUDICE to its renewal following the completion of discovery.

IT IS ORDERED that the Clerk send copies of this Memorandum and Recommendation to counsel for the respective parties, who have until 7 September 2012 to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. Any responses to objections shall be filed within 7 days after service thereof but in no event later than 14 September 2012.

SO ORDERED, this the 31st day of August 2012.

_____
James E. Gates
United States Magistrate Judge

15

Case 5:11-cv-00662-D   Document 29   Filed 08/31/12   Page 15 of 15