IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:11-CV-662-D

| | | |
|---|---|---|
| POLYZEN, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| RADIADYNE, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

On November 21, 2011, Polyzen, Inc. ("Polyzen" or "plaintiff"), filed suit against RadiaDyne, LLC ("RadiaDyne"), alleging patent infringement [D.E. 1]. On October 1, 2012, RadiaDyne answered and noted its counterclaims in a related suit [D.E. 32]. On November 4, 2013, Polyzen filed an amended complaint, alleging patent infringement, breach of contract, and misappropriation of trade secrets [D.E. 89]. On November 18, 2013, RadiaDyne answered and added an additional counterclaim of bad faith trade secret litigation [D.E. 91]. On December 19, 2013, Polyzen answered [D.E. 97].

On May 23, 2014, both parties filed multiple motions for summary judgment. Polyzen moved for summary judgment on the validity of the patent-in-suit [D.E. 107] and on its patent infringement claim [D.E. 116]. RadiaDyne moved for partial summary judgment on Polyzen's trade secret misappropriation claim [D.E. 108] and on its own breach of contract counterclaim [D.E. 112]. On December 12, 2014, the court denied Polyzen's motion for summary judgment on the validity of its patent [D.E. 141]. On February 18, 2015, the court granted in part RadiaDyne's motions for summary judgment [D.E. 142]. As explained below, the court now denies Polyzen's motion for

summary judgment on its patent infringement claim.

I.

The court has described the facts previously and relates them only briefly here. See [D.E. 142]. In early 2007, John Isham, founder and president of RadiaDyne, learned of Polyzen when searching the Internet for "medical balloons" and "medical devices." Isham Dep. [D.E. 109-2] 106. Isham then contacted Polyzen. Id. On February 12, 2007, RadiaDyne and Polyzen began working together to develop a medical balloon device design and the technology and process necessary to produce it. See Development & Commercialization Agreement ("2008 DCA") [D.E. 109-16] ¶ 3.d.

On July 27, 2007, Polyzen sent a balloon design to Isham, which he approved. See [D.E. 109-7] P 219. On July 31, 2007, Isham sent Rubin Shah, a Polyzen employee, an email and told Shah that he wanted to launch the product at the October 2007 ASTRO trade show. See [D.E. 109-8] RD 2649. Rubin Shah responded the same day and told Isham that he could meet the deadline despite it being "a very aggressive timeline." Id. Isham replied later in the day and asked for information on the manufacturing process so he could "submit [a] FDA Registration letter." Id.

On September 25, 2007, Polyzen filed a provisional patent application. See Tilak Shah 30(b)(6) Dep. [D.E. 132-1] 192, Feb. 26, 2014. Polyzen did not inform RadiaDyne of the patent application. Cf. id. 192–93; Tilak Shah Dep. [D.E. 113-11] 89–90, Mar. 15, 2013.

On October 9, 2007, Polyzen and RadiaDyne entered into a "Development and Commercialization Agreement" that assigned different rights and obligations to the two parties. See 2007 DCA [D.E. 122-3]. On February 8, 2008, the parties entered into a new and almost identical agreement. See 2008 DCA 2. Polyzen drafted the 2008 DCA with the assistance of Willy Manfroy, an intellectual property licensing specialist. See Tilak Shah 30(b)(6) Dep. 191, 262–64.

In 2008, RadiaDyne began communicating with Dielectrics, Inc. ("Dielectrics"), another

2

manufacturer, about producing the medical balloon. See [D.E. 109-17] DIE 117–19; [D.E. 129-4] RD 185–92. On March 12, 2008, Isham forwarded to Dielectrics the "product specification drawings" for the balloon. See [D.E. 109-17] DIE 117.

On September 25, 2008, Polyzen filed another patent application for a "Multi-Layer Film Welded Articulated Balloon." See '497 Patent [D.E. 1-3] 2.

On September 10, 2009, Isham forwarded to Dielectrics another email from Polyzen, which contained an attachment with an updated balloon design. See [D.E. 109-20] DIE 278–79. In November 2009, RadiaDyne terminated the 2008 DCA with Polyzen. See Def.'s Answer Am. Compl. [D.E. 91] ¶ 43.

On July 12, 2011, the United States Patent & Trademark Office ("PTO") issued Patent No. 7,976,497 ("the '497 patent"). See '497 Patent 2. The '497 patent listed Tilak Shah and Christopher Strom as inventors and Polyzen as the assignee. Id. The '497 patent issued with five claims, all directed to "a medical balloon device." Id. 10. On November 21, 2011, Polyzen brought this suit and alleged that RadiaDyne infringed the '497 patent in violation of 35 U.S.C. § 271. See Compl. [D.E. 1] 4–5.

II.

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The party seeking summary judgment must initially show an absence of genuine dispute of material facts or the absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If a moving party meets its burden, the nonmoving party must "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quotation and emphasis omitted).

3

A genuine issue for trial exists if there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient." Id. at 252; see Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) ("The nonmoving party, however, cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."). Only factual disputes that might affect the outcome under substantive law properly preclude summary judgment. Anderson, 477 U.S. at 248. In reviewing the factual record, the court views the facts in the light most favorable to the nonmoving party and draws reasonable inferences in that party's favor. Matsushita, 475 U.S. at 587.

A party infringes a patent when the party "without authority makes, uses, offers to sell, or sells any patented invention, within the United States." 35 U.S.C. § 271. A patentee has authority over its own patent and cannot infringe that patent. See Ortho Pharm. Corp. v. Genetics Inst., Inc., 52 F.3d 1026, 1031–32 (Fed. Cir. 1995) ("The proprietary rights granted by any patent are the rights to exclude others from making, using or selling the invention in the United States." (emphasis added)). Similarly, a licensee who acts within the scope of a patent license does not act "without authority" and, therefore, does not infringe the patent. See, e.g., De Forest Radio Tel. & Tel. Co. v. United States, 273 U.S. 236, 242 (1927); TransCore, LP v. Elec. Transaction Consultants Corp., 563 F.3d 1271, 1275–76 (Fed. Cir. 2009) (collecting cases); Intel Corp. v. VIA Techs., Inc., 319 F.3d 1357, 1361–63 (Fed. Cir. 2003).

The court already concluded that the 2008 DCA assigns to RadiaDyne certain property rights in the '497 patent. See [D.E. 142] 5–13. Assuming without deciding that RadiaDyne's challenged medical balloon devices implicate the claims of the '497 patent, RadiaDyne did not act "without authority" when it manufactured or caused to be manufactured those devices. Accordingly, Polyzen

4

is not entitled to judgment as a matter of law, and the court denies Polyzen's motion for summary judgment.

III.

In sum, the court DENIES Polyzen's motion for summary judgment on its patent infringement claim [D.E. 116].

SO ORDERED. This **31** day of March 2015.

                                                    JAMES C. DEVER III
                                                    Chief United States District Judge