IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:11-CV-662-D

POLYZEN, INC., )
 )
        Plaintiff, )
 )
v. ) **ORDER**
 )
RADIADYNE, LLC, )
 )
        Defendant. )

On February 18, 2015, the court granted in part and denied in part RadiaDyne's motion for partial summary judgment on Polyzen's trade secret misappropriation claim, granted RadiaDyne's motion for partial summary judgment on RadiaDyne's breach of contract claim, and requested supplemental briefing on the question of remedy for Polyzen's breach of contract. See [D.E. 142]. On March 6, 2015, Polyzen moved for the court to reconsider its order granting summary judgment to RadiaDyne on RadiaDyne's breach of contract claim [D.E. 146]. On March 6 and 16, 2015, Polyzen and RadiaDyne also submitted their respective memoranda and replies on the question of remedy [D.E. 147–48, 151–52]. On March 30, 2015, RadiaDyne responded in opposition to Polyzen's motion for reconsideration [D.E. 155]. On April 7, 2015, RadiaDyne moved for judgment on the pleadings on Polyzen's patent infringement claim [D.E. 160] and filed a supporting memorandum [D.E. 161]. On April 14, 2015, Polyzen replied in support of its motion for reconsideration and requested a hearing [D.E. 162]. On May 1, 2015, Polyzen responded in opposition to RadiaDyne's motion for judgment on the pleadings and requested a hearing [D.E. 163]. As explained below, the court grants Polyzen's motion for reconsideration and denies RadiaDyne's motion for judgment on the pleadings.

I.

"[A]n order of partial summary judgment is interlocutory in nature." Am. Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d 505, 514 (4th Cir. 2003); see Fed. R. Civ. P. 54(b). "[A] district court retains the power to reconsider and modify its interlocutory judgments, including partial summary judgments, at any time prior to final judgment when such is warranted." Am. Canoe Ass'n, 326 F.3d at 514–15. This power is "committed to the discretion of the district court." Id. at 515. In the exercise of that discretion, the court generally follows its previous orders unless these "exceptional circumstances" are present: "(1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to the issue, or (3) the prior decision was clearly erroneous and would work manifest injustice." Id. at 515–16; Sejman v. Warner-Lambert Co., 845 F.2d 66, 69 (4th Cir. 1988) (quotation omitted); see also Pharmanetics, Inc. v. Aventis Pharm., Inc., No. 5:03-CV-817-FL(2), 2005 WL 6000369, at *3–4 (E.D.N.C. May 4, 2005) (unpublished). "Law of the case is just that however, it does not and cannot limit the power of a court to reconsider an earlier ruling." Am. Canoe Ass'n, 326 F.3d at 515. "The ultimate responsibility of the federal courts, at all levels, is to reach the correct judgment under law." Id.

Polyzen argues that the court's February 18, 2015 order "would work a manifest injustice." Pl.'s Mot. Reconsideration [D.E. 146] 1. In support, Polyzen makes three main arguments: (1) Polyzen's ownership of the '497 patent does not conflict with RadiaDyne's rights under the 2008 DCA; (2) the DCA explicitly acknowledges patent ownership by Polyzen; and (3) the intellectual property rights that the DCA granted to RadiaDyne are different in scope from the '497 patent. Id. 3–12. The court addressed the first two arguments in its order, and Polyzen's arguments do not merit reconsideration. See [D.E. 142] 7–12, 8 n.2. Polyzen's third argument, which it makes (at least clearly) for the first time, presents a more interesting question.

2

A patentee may assign, grant, and convey "(1) the whole patent, comprising the exclusive right to make, use, and vend the invention throughout the United States; or (2) an undivided part or share of that exclusive right; or (3) the exclusive right under the patent within and throughout a specified part of the United States." Waterman v. Mackenzie, 138 U.S. 252, 255 (1891); see Enzo APA & Son, Inc. v. Geapag A.G., 134 F.3d 1090, 1093 (Fed. Cir. 1998); Rite-Hite Corp. v. Kelley Co., 56 F.3d 1538, 1551 (Fed. Cir. 1995) (en banc). "Any assignment or transfer, short of one of these, is a mere license, giving the licensee no title in the patent . . . ." Waterman, 138 U.S. at 255; Rite-Hite, 56 F.3d at 1551–52.

Polyzen argues that the scope of the '497 patent is broader than the definition of RadiaDyne Product in the 2008 DCA. Pl.'s Mot. Reconsideration [D.E. 146] 6–11. First, Polyzen argues that claim 1 "does not define any particular shape nor any particular medical purpose" and is broader than the design of the rectal balloon catheter. Id. 10. Polyzen then argues that claims 2, 3, and 5 add a shape to the medical balloon device that is used not only in the RadiaDyne rectal balloon catheter but also may be used in other medical devices to form different shapes, all with the "distal bulge" referenced in those claims. Id.; see '497 Patent [D.E. 116-1] 9. Polyzen's final (and perhaps most cogent) argument is that claim 4 of the '497 patent includes characteristics that are not included in the design of the rectal balloon catheter that the 2008 DCA assigns to RadiaDyne. See Pl.'s Mot. Reconsideration [D.E. 146] 10 ("Claim 4 adds: 'to form an arcuate shape' which is one of the many specifically non-prostate embodiments of Figure 5."). Tilak Shah testified that an embodiment of this "arcuate shape" was designed for "open heart massage." [D.E. 146-3] ¶ 8. Christopher Strom testified that the "arcuate shape" in claim 4 was narrower in definition than a distal bulge and that Isham did not request this shape. [D.E. 155-1] 21–22 ("An arcuate shape . . . could be a bulge, but a bulge isn't necessarily an arcuate shape.").

3

This last argument and testimony suggest that there is a genuine issue of material fact regarding whether the scope of the '497 patent is broader than the definition of RadiaDyne Product, with specific reference to claim 4. If the '497 patent's scope is broader, then, because ownership of a portion of a patent cannot be assigned, see Waterman, 138 U.S. at 255, the 2008 DCA did not require Polyzen to transfer ownership of the entire patent to RadiaDyne. Instead, as Polyzen concedes, the 2008 DCA called for Polyzen to grant an exclusive license to RadiaDyne to some portion of the '497 patent. Pl.'s Mot. Reconsideration [D.E. 146] 14.[1]

This conclusion does not resolve the motion for reconsideration, which turns instead on whether Polyzen breached the 2008 DCA when it filed the '497 patent and failed to explicitly grant an exclusive license to RadiaDyne for the RadiaDyne Product. Specifically, did the 2008 DCA, by operation of law, create an exclusive license for RadiaDyne when the '497 patent issued? If so, then Polyzen did not breach the 2008 DCA when it assigned the '497 patent to itself. If the 2008 DCA did not automatically create an exclusive license for RadiaDyne, then Polyzen's failure to explicitly grant a license to RadiaDyne may constitute a breach of the 2008 DCA.

"[T]he question of whether a patent assignment clause creates an automatic assignment or merely an obligation to assign" is a question of federal law. Bd. of Trs. of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc., 583 F.3d 832, 841 (Fed. Cir. 2009). Contractual language that "'agree[s] to assign' reflects a mere promise to assign rights in the future, not an immediate transfer of expectant interests." Id. Conversely, contractual language that expressly grants an interest in a patent may, by operation of law, effect transfer of title without further action. See, e.g., FilmTec

---

[1] An exclusive license carries with it not only the right of the licensee to be free from suit but also the right to sue patent infringers. See Rite-Hite, 56 F.3d at 1552 (noting that an "exclusive licensee" "may possess sufficient interest in the patent to have standing to sue as a co-plaintiff with the patentee").

Corp. v. Allied-Signal Inc., 939 F.2d 1568, 1573 (Fed. Cir. 1991). For example, "[i]f an assignment of rights in an invention is made prior to the existence of the invention, this may be viewed as an assignment of an expectant interest. . . . Once the invention is made and an application for patent is filed, however, legal title to the rights accruing thereunder would be in the assignee . . . ." Id. at 1572; see FilmTec Corp. v. Hydranautics, 982 F.2d 1546, 1553 (Fed. Cir. 1992) (finding that, where an employment contract expressly granted the government the rights to an employee's inventions, "when the invention was conceived by [the employee], title to that invention immediately vested in the United States by operation of law").

In Roche, the Federal Circuit compared two contracts with different results. In the first contract, Holodniy, a Stanford employee, recited that "I agree to assign or confirm in writing to Stanford" that the inventions would be assigned to Stanford or the government, as required. Roche, 583 F.3d at 841 (emphasis omitted). The court held that "[w]hile Stanford might have gained certain equitable rights against Holodniy, Stanford did not immediately gain title to Holodniy's inventions as a result of the [contract], nor at the time the inventions were created." Id. at 841–42 (internal quotation omitted). The second contract that Holodniy entered into stated that Holodniy "will assign and do[es] hereby assign to [employer] my right, title, and interest in each of the ideas, inventions and improvements." Id. at 842 (emphasis omitted). The Roche court held that the language of "do hereby assign" "effected a present assignment of Holodniy's future inventions." Id.; see Speedplay, Inc. v. Bebop, Inc., 211 F.3d 1245, 1253 (Fed. Cir. 2000) (holding that contractual language of "shall belong" and "hereby conveys, transfers and assigns" created a present assignment); Arachnid, Inc. v. Merit Indus., Inc., 939 F.2d 1574, 1576, 1580–81 (Fed. Cir. 1991) (holding that contractual language of "will be assigned" did "not rise to the level of a present assignment of an existing invention, effective to transfer all legal and equitable rights therein"); Allied-Signal, 939 F.2d at

5

1570, 1573 (holding that contractual language of "agrees to grant and does hereby grant" created a present assignment). Although these cases deal specifically with <u>assignments</u> of patents, the principle of conveyances by operation of law is analogous to the creation of licenses.

The relevant contractual language in the 2008 DCA states that "RadiaDyne Product <u>will remain</u> the propert[y] of RadiaDyne." 2008 DCA [D.E. 109-16] 4 (paragraph 6.a). "Remain" means "to continue unchanged in form, condition, status, or quantity" or "continue to be." <u>Webster's Third New International Dictionary</u> 1919 (1993). "Will remain" arguably falls into a grey zone between the strong operative language of "does hereby grant," which unambiguously creates a present interest, and the future-focused language of "will be assigned," which creates only an equitable interest and not legal title. <u>Cf.</u> <u>Roche</u>, 583 F.3d at 841 (noting that a promisee "might have gained certain equitable rights" against the inventor where the contract contained an agreement to assign); <u>Arachnid</u>, 939 F.2d at 1581 ("Although an agreement to assign in the future inventions not yet developed may vest the promisee with <u>equitable</u> rights in those inventions once made, such an agreement does not by itself vest <u>legal</u> title to patents on the inventions in the promisee."). The most natural reading, however, creates a present legal interest in RadiaDyne in an exclusive license. "Will remain" suggests that the RadiaDyne Product always has been and continues to be the property of RadiaDyne; there was no additional right that needed to be assigned when the '497 patent application was filed and when the '497 patent issued. Thus, the 2008 DCA created by operation of law an exclusive license for RadiaDyne to the claims of the '497 patent covered by the definition of RadiaDyne Product. <u>See</u> <u>Roche</u>, 583 F.3d at 842 (noting that a present assignment creates a legal title in the patent "no later than the parent application's filing date"); Tilak Shah 30(b)(6) Dep. [D.E. 132-1] 192 (Polyzen filed its provisional patent application on September 25, 2007). With the automatic issuance of an exclusive license, Polyzen did not breach the terms of the 2008 DCA

6

because it transferred to RadiaDyne, to the extent legally possible, the patent rights that the 2008 DCA created in RadiaDyne.

Here, there is a genuine issue of material fact as to the scope of the '497 patent and whether the 2008 DCA required Polyzen to assign the '497 patent to RadiaDyne or grant an exclusive license to specific claims of that patent. If the 2008 DCA required Polyzen to grant an exclusive license, the 2008 DCA also created that license by operation of law, thereby avoiding the breach of contract that the court previously determined occurred. Thus, the court grants Polyzen's motion for reconsideration [D.E. 146] and denies RadiaDyne's motion for partial summary judgment on its breach of contract claim [D.E. 112].

II.

RadiaDyne has moved under Rule 12(c) for judgment on the pleadings with respect to Polyzen's patent infringement claim. See Fed. R. Civ. P. 12(c); [D.E. 160]. A court ruling on a Rule 12(c) motion for judgment on the pleadings applies the same standard as a Rule 12(b)(6) motion to dismiss. See Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc., 674 F.3d 369, 375 (4th Cir. 2012); Burbach Broad. Co. of Del. v. Elkins Radio Corp., 278 F.3d 401, 405–06 (4th Cir. 2002).

In opposition to RadiaDyne's motion, Polyzen argues that, whatever the scope of RadiaDyne's exclusive license to the '497 patent, the authority to make the rectal balloon catheter was not included. See Pl.'s Mem. Opp'n Mot. J. Pleadings [D.E. 163] 2; see also 35 U.S.C. § 271 (noting that a party may infringe a patent if that party "makes, uses, offers to sell, or sells any patented invention" without authority (emphasis added)). If the 2008 DCA creates an exclusive license in the '497 patent and does not require an assignment of that patent, there is a genuine issue of material fact as to the scope of the exclusive license. In paragraph 6.b of the 2008 DCA, Polyzen granted to RadiaDyne the "non-exclusive rights to use, sale [sic] and have sold . . . Device Process

7

Technology for RadiaDyne Product application." [D.E. 109-16] 4 (paragraph 6.b). Device Process Technology, in turn, is defined in part as the "fabrication processes . . . to manufacture specific product for RadiaDyne." Id 2 (paragraph 2.c). Polyzen also granted to RadiaDyne the "exclusive rights to use, sale [sic] and have sold . . . Balloon Process Technology for RadiaDyne Product application." Id. 4 (paragraph 6.c). Finally, paragraph 6.d, which relates to a manufacturing and supply agreement, notes that under certain conditions Polyzen would agree to "grant non-exclusive license to make and have made to RadiaDyne" for Polyzen's intellectual property. Id. (paragraph 6.d).

Assuming that the 2008 DCA created an exclusive license in the '497 patent for RadiaDyne and did not require an assignment of the patent, a genuine issue of material fact exists concerning whether the exclusive license granted to RadiaDyne with respect to some claims of the '497 patent includes the authority to make the device in question. Judgment on the pleadings is inappropriate. Accordingly, the motion for judgment on the pleadings is denied.

III.

In sum, the court GRANTS Polyzen's motion for reconsideration [D.E. 146] and denies RadiaDyne's earlier motion for partial summary judgment on RadiaDyne's breach of contract claim [D.E. 112]. The court DENIES RadiaDyne's motion for judgment on the pleadings [D.E. 160]. The court GRANTS RadiaDyne's motions to seal [D.E. 149, 153, 156].

SO ORDERED. This _7_ day of August 2015.

JAMES C. DEVER III
Chief United States District Judge

8