IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:11-CV-662-D

POLYZEN, INC.,                           )
                                         )
                    Plaintiff,           )
                                         )
        v.                               )           **ORDER**
                                         )
RADIADYNE, LLC,                          )
                                         )
                    Defendant.           )

On February 29, 2016, RadiaDyne, LLC ("RadiaDyne" or "defendant") moved for summary judgment concerning Polyzen, Inc.'s ("Polyzen" or "plaintiff") patent-infringement claim [D.E. 248] and filed a memorandum in support [D.E. 249]. Essentially, RadiaDyne contends that, as a matter of law, it at least jointly owns the patent at issue in this case, U.S. Patent 7,976,497 ("the '497 patent"), that RadiaDyne does not consent to Polyzen's patent-infringement claim against RadiaDyne, and that Polyzen lacks standing to pursue the patent-infringement claim absent such consent. See, e.g., Lucent Techs., Inc. v. Gateway, Inc., 543 F.3d 710, 722 (Fed. Cir. 2008). On March 21, 2016, Polyzen responded in opposition [D.E. 254] and filed a cross-motion for summary judgment on all ownership issues [D.E. 255]. On April 1, 2016, RadiaDyne replied [D.E. 256]. Additionally, on April 18, 2016, RadiaDyne filed a supplemental motion for summary judgment [D.E. 268], a memorandum in support [D.E. 270], and a statement of uncontested facts [D.E. 269]. Thereafter, Polyzen replied and responded [D.E. 266, 287, 288], and RadiaDyne responded and replied [D.E. 267, 290].

As explained below, the court concludes that it lacks subject-matter jurisdiction over Polyzen's patent-infringement claim because RadiaDyne at least jointly owns the '497 patent,

RadiaDyne has not consented to Polyzen's patent-infringement lawsuit, and Polyzen lacks standing to sue for patent infringement without RadiaDyne's consent. Accordingly, the court denies RadiaDyne's motion and supplemental motion for summary judgment concerning Polyzen's patent-infringement claim [D.E. 248, 268], denies Polyzen's cross-motion for summary judgment on all ownership issues [D.E. 255], but dismisses without prejudice Polyzen's patent-infringement claim for lack of subject-matter jurisdiction. See Fed. R. Civ. P. 12(b)(1); cf. Fed R. Civ. P. 56. Furthermore, this ruling makes irrelevant much evidence at issue in various motions in limine. Thus, as explained below, the court grants Polyzen's motion in limine to exclude lawyer witnesses [D.E. 180], grants RadiaDyne's motion in limine to exclude evidence regarding allegations of invalidity or improper inventorship of RadiaDyne's patent portfolio [D.E. 181], grants RadiaDyne's motion in limine to exclude the testimony of Polyzen's technical expert Len Czuba [D.E. 189], and grants Polyzen's motion in limine to exclude evidence regarding RadiaDyne's patent portfolio and purported assignment of the '497 patent in suit to RadiaDyne [D.E. 210]. As for Polyzen's motion in limine to exclude portions of the testimony of RadiaDyne's technical expert Michael Foreman [D.E. 179], the motion is granted in part and denied in part. As for RadiaDyne's motion in limine to partially exclude testimony of Polyzen's damages expert Graham Rogers [D.E. 185], the motion is granted. Finally, as for RadiaDyne's motion to exclude evidence [D.E. 213], the motion is granted in part and denied in part.

I.

In early 2007, John Isham, founder and president of RadiaDyne, learned of Polyzen when searching the Internet for "medical balloons" and "medical devices." Isham Dep. [D.E. 66-5] 106–08, 131–38. Isham had an idea for a non-latex rectal medical balloon catheter used in connection with prostate treatment and was looking for someone to assist with producing and manufacturing it. Id.

2

Isham contacted Polyzen, but did not want to reveal the details of his idea until Polyzen entered into a Confidentiality Agreement. See id. On February 9, 2007, RadiaDyne and Polyzen entered into a Confidentiality Agreement. See [D.E. 287-9]. The Confidentiality Agreement stated that "[b]oth parties agree that no right or license under any patent or trade secret now or hereafter owned or controlled by either party is granted to the other party by this agreement." Id. 2. On February 12, 2007, RadiaDyne and Polyzen began working together to develop a medical balloon device design and the technology and process necessary to produce and manufacture it. See Development & Commercialization Agreement ("2008 DCA") [D.E. 284-10] ¶ 3.d; see also Isham Dep. [D.E. 66-5] 132–204; Strom Dep. [D.E. 66-4] 42–146.

On March 26, 2007, Rubin Shah, a Polyzen employee, sent Isham a quote for a project to "Design & Thermoform/ RF Weld PU Balloon – Phase I." See [D.E. 109-3] 3–4. The quote totaled $23,500, and it included a price of $4,500 for "design" and a price of $19,000 for prototype production. Id. Tilak Shah, Polyzen's founder, created the quote. Id. 4; Tilak Shah 30(b)(6) Dep. [D.E. 132-1] 24. On March 28, 2007, RadiaDyne issued a purchase order to Polyzen for a total of $23,500. See [D.E. 109-4] RD 1132. On March 29, 2007, Polyzen sent RadiaDyne its first invoice, and RadiaDyne paid a deposit of $4,500. See [D.E. 109-5] RD 1131; [D.E. 109-6] RD 1136.

On July 20, 2007, Polyzen's Rubin Shah emailed RadiaDyne's John Isham a "first draft" of the Development and Commercialization Agreement ("DCA") that Polyzen had prepared on July 18, 2007. See [D.E. 284-1]. The "purpose of [the DCA was] to document various verbal agreements and understandings between the parties and define future expectations of each other as both parties continue the efforts on the product development and manufacturing of samples for a) feasibility study; b) functionality testing; c) clinical trials and future commercialization of specific design of rectal balloon catheter." [D.E. 284-2] ¶ 1. The first draft of the DCA defined "RADIADYNE PRODUCT"

3

in paragraph 2.e as "[s]pecific design of rectal balloon catheter for locating/supporting prostate during brachytherapy with Polyzen's Balloon Process Technology." Id. ¶ 2.e. The first draft of the DCA also confirmed that "[t]he parties agree that RADIADYNE TECHNOLOGY and RADIADYNE PRODUCT will remain the properties of RADIADYNE." Id. ¶ 6.a. Thereafter, RadiaDyne and Polyzen agreed upon a three-layer balloon that Polyzen would make for RadiaDyne to sell to clinicians for "immobilizing the prostate during radiation therapy treatments for cancer patients." [D.E. 288] 3. The balloon design "included internal welds and a distal bulge when the balloon was inflated." Id.

On July 27, 2007, Polyzen sent the three-layer balloon design to Isham, which he approved. See [D.E. 284-3]; [D.E. 109-7] P 219. On July 31, 2007, Isham sent Rubin Shah an email and told him that RadiaDyne wanted to launch the product at the October 2007 ASTRO trade show. See [D.E. 109-8] RD 2649. Rubin Shah responded that same day and told Isham that Polyzen could meet the deadline despite it being "a very aggressive timeline." Id. Isham replied later in the day and asked for information on the manufacturing process so he could "submit [an] FDA Registration letter." Id.

On August 16, 2007, Polyzen prepared an updated draft of the DCA. See [D.E. 284-4]. Also on August 16, 2007, Ruben Shah of Polyzen forwarded the updated draft to Isham of RadiaDyne for his review. See [D.E. 275] 87. The August 16, 2007 updated draft DCA stated:

> The purpose of this term sheet is to document various verbal agreements and understandings between the parties and define future expectations of each other as both parties continue the efforts on the product development and manufacturing of samples for a) feasibility study; b) functionality testing; c) clinical trials and future commercialization of specific design of rectal balloon catheter, and this will serve as a reference document during initial stages of work between the parties until further manufacturing/supply agreement to be concluded.

[D.E. 284-4] ¶ 1. The August 16, 2007 updated draft DCA contained the same definitions of "RADIADYNE PRODUCT" and provisions for ownership of "RADIADYNE PRODUCT" as the

4

July 2007 draft DCA. See id. ¶¶ 2.e, 6.a.

On September 25, 2007, Polyzen filed a provisional patent application for what would become the '497 patent. See Tilak Shah 30(b)(6) [D.E. 284-7] Dep. 192. Polyzen did not inform RadiaDyne of the provisional patent application, and RadiaDyne was unaware of it. See id. 192–93; Tilak Shah Mar. 15, 2013 Dep. [D.E. 284-6] 89. Polyzen intended to file the patent application before the balloon was publicly displayed at the October 2007 ASTRO trade show. See Tilak Shah 30(b)(6) Dep. [132-1] 223–28.

On September 26, 2007, Tilak Shah sent Isham quotes for two new phases: Phase II, which consisted of the production of 100 samples "for testing and trials," and Phase III, which consisted of full-scale production of the medical balloons. See [D.E. 109-9] 2–7. RadiaDyne completed purchase orders for both phases. See [D.E. 109-10, 109-11].

On October 9, 2007, Polyzen and RadiaDyne entered into a "Development and Commercialization Agreement" that memorialized different rights and obligations of the two parties. See October 2007 DCA [D.E. 284-8]. The October 2007 DCA stated:

> The purpose of this agreement is to document various verbal agreements and understandings between the parties and define future expectations of each other as both parties continue the efforts on the product development and manufacturing of samples for a) feasibility study; b) functionality testing; c) clinical trials and future commercialization of specific design of rectal balloon catheter.

Id. ¶ 1. The October 2007 DCA defined "RADIADYNE PRODUCT as "[s]pecific design of rectal balloon catheter for locating/supporting prostate during radiation therapy with Polyzen's Balloon Process Technology" and confirmed RadiaDyne's ownership of "RADIADYNE PRODUCT." See id. ¶¶ 2.e, 6.a. In the October 2007 DCA, at Isham's request, "radiation therapy" was substituted for "brachytherapy." See [D.E. 284-1].

On October 25, 2007, at Polyzen's request, RadiaDyne tore up the October 2007 DCA

5

because Polyzen wanted to change paragraph 6.d concerning manufacturing of the "RADIADYNE PRODUCT." See [D.E. 284-9].

On February 8, 2008, Polyzen and RadiaDyne entered into a new and almost identical DCA. See [D.E. 284-10]. Polyzen drafted the 2008 DCA with the assistance of Willy Manfroy, an intellectual property licensing specialist. See Tilak Shah 30(b)(6) Dep. [D.E. 132-1] 191, 262–64.

The 2008 DCA stated:

> The purpose of this agreement is to document various verbal agreements and understandings between the parties and define future expectations of each other as both parties continue the efforts on the product development and manufacturing of samples for a) feasibility study; b) functionality testing; c) clinical trials and future commercialization of specific design of rectal balloon catheter.

[D.E. 284-10] ¶ 1. The 2008 DCA defined "RADIADYNE PRODUCT" as "[s]pecific design of rectal balloon catheter for locating/supporting prostate during radiation therapy with Polyzen's Balloon Process Technology." Id. ¶ 2.e (emphasis omitted). The 2008 DCA defined Polyzen's Balloon Process Technology as "POLYZEN'S PU film welded balloon technology, including film formulation, thickness and multi-layer film welded, designed to articulate desired shape and profile of balloons for various applications. Functional coating, including anti-adhesion coating formulation and process to apply such formulation onto any device. POLYZEN provided coating services for a fee to cover all out-of-pocket expenses and overhead to prepare samples or coat the products for its customers." Id. ¶ 2.d. In the 2008 DCA, "[t]he parties agree[d] that RADIADYNE TECHNOLOGY and RADIADYNE PRODUCT will remain the properties of RADIADYNE and POLYZEN TECHNOLOGY, DEVICE PROCESS TECHNOLOGY and BALLOON PROCESS TECHNOLOGY will remain the property of POLYZEN." Id. ¶ 6.a. In the 2008 DCA, the parties also agreed that definition and assignment of intellectual property survive any termination of the 2008 DCA and the confidentiality agreement dated February 12, 2007, between the parties. Id. ¶ 7.b.

6

On March 12, 2008, Isham forwarded to Dielectrics, Inc. ("Dielectrics"), another manufacturer, the "product specification drawings" for the balloon which Polyzen had sent to Isham. See [D.E. 109-17] DIE 117–19.

On September 25, 2008, Polyzen filed a utility patent application for a "Multi-Layer Film Welded Articulated Balloon." See [D.E. 284-11]; Tilak Shah 30(b)(6) Dep. [D.E. 132-1] 230. The utility patent application would become the '497 patent. See [D.E. 284-11].

On September 10, 2009, Isham forwarded to Dielectrics another email from Polyzen, which contained an attachment with an updated balloon design. See [D.E. 109-20] DIE 278–79. In November 2009, RadiaDyne terminated the 2008 DCA with Polyzen. See Def.'s Answer Am. Compl. [D.E. 91] ¶ 43.

On July 12, 2011, the United States Patent & Trademark Office ("PTO") issued Patent No. 7,976,497 ("the '497 patent"). See [D.E. 284-11]. The '497 patent listed Tilak Shah and Christopher Strom as inventors and Polyzen as the assignee. Id. The '497 patent issued with five claims, all reciting a three-layer "medical balloon device." Id. Col. 4, lines 19–54.[1] Four of the

---

[1] The '497 patent's five claims are:
1. A medical balloon device, comprising:
a first thermoplastic film layer comprising a first material, wherein the first layer includes a first edge;
a second thermoplastic film layer comprising a second material, wherein the second layer includes a second edge joined to the first edge to form a bottom inflatable compartment between the first and second layer;
a third thermoplastic film layer including proximal and distal portions and comprising a third material different from the first and second materials wherein the third layer includes a third edge joined to the second edge to form a top inflatable compartment between the second and third layer; and
an opening in said bottom inflatable compartment to receive a lumen, wherein the bottom inflatable compartment is in fluid communication with the top inflatable compartment.
2. The medical balloon device of claim 1, wherein the second and third layers are secured intermediate said second and third edges so that the distal portion of the third

7

claims specify an inflated distal bulge or "arcuate shape." Id. Col. 4, lines 37–54 (claims 2–5).

On November 21, 2011, Polyzen filed suit in this court against RadiaDyne alleging patent infringement of the '497 patent [D.E. 1]. On December 13, 2011, RadiaDyne moved to dismiss Polyzen's action for lack of jurisdiction and to correct ownership of the patent-in-suit [D.E. 10]. On December 23, 2011, RadiaDyne sued Polyzen in the United States District Court for the Southern District of Texas, alleging breach of contract, fraud, federal unfair competition under 15 U.S.C. § 1125(a), conversion, and trespass to chattels. See Complaint at 9–13, RadiaDyne LLC v. Polyzen, Inc., No. 5:12-CV-102-D (E.D.N.C. Dec. 23, 2011), [D.E. 1]. On February 24, 2012, the Southern District of Texas transferred RadiaDyne's case to this court. See Order, RadiaDyne LLC v. Polyzen, Inc., No. 5:12-CV-102-D (E.D.N.C. Feb. 24, 2012), [D.E. 10]. On July 2, 2012, the court consolidated the two cases [D.E. 26]. On September 13, 2012, the court denied without prejudice RadiaDyne's motion to dismiss for lack of jurisdiction and to correct ownership [D.E. 30].

On June 4, 2013, RadiaDyne moved for partial summary judgment on co-inventorship as to claims 2–5 of the patent in suit [D.E. 65]. On June 28, 2013, Polyzen filed a cross-motion for summary judgment on co-inventorship [D.E. 72]. On October 31, 2013, the court denied both

---

layer bulges upwardly upon inflation.

3. The medical balloon device of claim 1, wherein the top inflatable compartment is adapted to distend to form a bulged conformation of the distal portion of the third layer relative to the proximal portion upon inflation.

4. The medical balloon device of claim 1, wherein the top inflatable compartment is further secured between the second and third layers intermediate said second and third edges to form an arcuate shape in the distal portion of the third layer upon inflation.

5. The medical balloon device of claim 1, wherein the second and third layers are secured at an intermediate portion so that said third layer upon inflation bulges upwardly between the intermediate portion and the third edge at the distal portion of the third layer.

[D.E. 284-11].

motions for summary judgment on co-inventorship [D.E. 88].

On November 4, 2013, Polyzen filed an amended complaint alleging patent infringement, breach of contract, and misappropriation of trade secrets [D.E. 89]. On November 18, 2013, RadiaDyne answered and added an additional counterclaim of bad faith trade-secret litigation [D.E. 91]. On December 19, 2013, Polyzen answered [D.E. 97].

On May 23, 2014, both parties filed motions for partial summary judgment. Polyzen moved for partial summary judgment on the validity of the patent-in-suit [D.E. 107] and on its patent-infringement claim [D.E. 116]. RadiaDyne moved for partial summary judgment on Polyzen's trade-secret-misappropriation claim [D.E. 108] and on its breach-of-contract counterclaim [D.E. 112]. On December 12, 2014, the court denied without prejudice Polyzen's motion for partial summary judgment on the validity of its patent [D.E. 141].

On February 18, 2015, the court granted RadiaDyne's motion for partial summary judgment on its breach-of-contract claim and requested briefing on specific performance. See [D.E. 142] 18. The court also granted in part and denied in part RadiaDyne's motion for summary judgment on Polyzen's trade-secret-misappropriation claim. See id. The court limited Polyzen's trade-secret-misappropriation claim to the information contained in Note 1 of DIE 279. See id.

On March 6, 2015, Polyzen asked the court to reconsider its order granting summary judgment to RadiaDyne on RadiaDyne's breach-of-contract claim. See [D.E. 146]. On August 7, 2015, the court granted Polyzen's motion for reconsideration in part and denied RadiaDyne's earlier motion for partial summary judgment on RadiaDyne's breach-of-contract claim. See [D.E. 165] 2–8. The court also denied RadiaDyne's motion for judgment on the pleadings concerning Polyzen's patent-infringement claim. See id

On January 29, 2016, the court held the pretrial conference. See [D.E. 242]. At the pretrial

conference, RadiaDyne presented information casting serious doubt on this court's subject-matter jurisdiction over Polyzen's patent-infringement claim. See id. On February 10, 2016, the court cancelled the trial scheduled to begin on February 24, 2016, and ordered RadiaDyne to submit a motion for summary judgment and memorandum explaining why it believed that the court lacked subject-matter jurisdiction over Polyzen's patent-infringement claim. See [D.E. 246].

On February 29, 2016, RadiaDyne moved for summary judgment on Polyzen's patent-infringement claim [D.E. 248] and filed a memorandum of support [D.E. 249]. On March 21, 2016, Polyzen cross-moved for summary judgment on all ownership issues [D.E. 255]. On April 18, 2016, RadiaDyne filed a supplemental motion for summary judgment [D.E. 268], a memorandum in support [D.E. 270], and a statement of uncontested facts [D.E. 269].

II.

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The party seeking summary judgment must initially show an absence of a genuine dispute of material fact or the absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If a moving party meets its burden, the nonmoving party must "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quotation and emphasis omitted). A genuine issue for trial exists if there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient . . . ." Id. at 252; see Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) ("The nonmoving party, however, cannot create a genuine issue of material fact through mere speculation or the building of one

10

inference upon another."). Only factual disputes that might affect the outcome under substantive law properly preclude summary judgment. Anderson, 477 U.S. at 248. In reviewing the factual record, the court views the facts in the light most favorable to the nonmoving party and draws reasonable inferences in that party's favor. Matsushita, 475 U.S. at 587–88. "When cross-motions for summary judgment are before a court, the court examines each motion separately, employing the familiar standard under Rule 56 of the Federal Rules of Civil Procedure." Desmond v. PNGI Charles Town Gaming, L.L.C., 630 F.3d 351, 354 (4th Cir. 2011).

RadiaDyne seeks summary judgment on Polyzen's patent-infringement claim and contends that Polyzen lacks standing to sue because RadiaDyne at least jointly owns the '497 patent and does not consent to Polyzen's patent-infringement claim in this lawsuit. See, e.g., SiRF Tech., Inc. v. Int'l Trade Comm'n, 601 F.3d 1319, 1325 (Fed. Cir. 2010) (holding that "[a]bsent the voluntary joinder of all co-owners of a patent, a co-owner acting alone" lacks standing to sue for patent infringement (quotation omitted)); Lucent Techs., Inc., 543 F.3d at 721–22 (same); Israel Bio-Eng'g Project v. Amgen Inc., 475 F.3d 1256, 1264 (Fed. Cir. 2007) ("Where one co-owner possesses an undivided part of the entire patent, that joint owner must join all the other co-owners to establish standing."); Ethicon, Inc. v. U.S. Surgical Corp., 135 F.3d 1456, 1468 (Fed. Cir. 1998) ("[A]s a matter of substantive patent law, all co-owners must ordinarily consent to join as plaintiffs in an infringement suit."); Schering Corp. v. Roussel-UCLAF SA, 104 F.3d 341, 345 (Fed. Cir. 1997) ("[O]ne co-owner has the right to impede the other co-owner's ability to sue infringers by refusing to voluntarily join in such a suit."). "Absent the voluntary joinder of all co-owners of a patent, a co-owner acting alone will lack standing." Israel Bio-Eng'g Project, 475 F.3d at 1264–65.

Polyzen, as the party bringing the patent-infringement claim, must establish that it has standing to sue for patent infringement. See, e.g., MHL TEK, LLC v. Nissan Motor Co., 655 F.3d

11

1266, 1274 (Fed. Cir. 2011). In support of its position that it has standing to sue RadiaDyne for patent infringement concerning the '497 patent, Polyzen contends that RadiaDyne is not the co-owner of the '497 patent.

Subject-matter jurisdiction is the court's "statutory or constitutional power to adjudicate the case." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998) (emphasis omitted). The court "must determine that it has subject-matter jurisdiction over [a claim] before it can pass on the merits of that [claim]." Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 479–80 (4th Cir. 2005). Polyzen has the burden of establishing that the court has subject-matter jurisdiction over its patent-infringement claim. See, e.g., Steel Co., 523 U.S. at 104; Richmond, Fredericksburg & Potomac R.R. v. United States, 945 F.2d 765, 768 (4th Cir. 1991).

The procedural posture of the case is complex, and RadiaDyne (at this court's direction) used a motion for summary judgment to assert this court's lack of subject-matter jurisdiction. See [D.E. 248, 268]. Likewise, Polyzen filed a cross-motion for summary judgment on all ownership issues [D.E. 255]. However, where the court may dismiss a claim under Rule 56 or Rule 12(b)(1) for lack of subject-matter jurisdiction, the Fourth Circuit has "observe[d] that[,] rather than granting summary judgment pursuant to Rule 56[ ], the district court should . . . dismiss[ ] the suit for want of jurisdiction under Rule 12(b)(1)." Williams v. United States, 50 F.3d 299, 304 (4th Cir. 1995); see White Tail Park, Inc. v. Stroube, 413 F.3d 451, 459 (4th Cir. 2005); Evans v. B.F. Perkins, Div. of Standex Int'l Corp., 166 F.3d 642, 647 & n.3 (4th Cir. 1999); see also Saval v. BL Ltd., 710 F.2d 1027, 1029 n.2 (4th Cir. 1983). Proceeding under the Rule 12(b)(1) framework is appropriate even where neither party has brought a motion under it. See Williams, 50 F.3d at 301–02, 304 (discussing procedural posture).

There are two ways that the court may conclude that it lacks subject-matter jurisdiction under

12

Rule 12(b)(1). See Lovern v. Edwards, 190 F.3d 648, 654 (4th Cir. 1999). "The court may find insufficient allegations in the pleadings, viewing the alleged facts in the light most favorable to the plaintiff, similar to an evaluation pursuant to Rule 12(b)(6). Alternatively, after an evidentiary hearing, the court may weigh the evidence in determining whether the facts support the jurisdictional allegations." Id. (citations omitted). Thus, a motion under Rule 12(b)(1) permits "[a] trial court [to] consider evidence by affidavit, depositions or live testimony without converting the proceeding to one for summary judgment." Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982); see Suter v. United States, 441 F.3d 306, 309 n.2 (4th Cir. 2006). When the court weighs the evidence relevant to subject-matter jurisdiction, "the presumption of truthfulness normally accorded a complaint's allegations does not apply, and the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009). Here, neither party has requested an evidentiary hearing, but both have submitted competent evidence relevant to subject-matter jurisdiction. Thus, the court considers that evidence in resolving the dispute about subject-matter jurisdiction. See id. at 192–93; White Tail Park, Inc., 413 F.3d at 459; Evans, 166 F.3d at 647; Williams, 50 F.3d at 303–04; Saval, 710 F.2d at 1029 n.2.

In resolving whether Polyzen has standing to assert its patent-infringement claim, this court notes that it has twice analyzed the '497 patent and the 2008 DCA. Specifically, on February 18, 2015, this court resolved pending motions for partial summary judgment. See [D.E. 142]. In its order, the court discussed the '497 patent and the 2008 DCA. The court wrote:

> The 2008 DCA assigns to RadiaDyne the so-called "RadiaDyne Product," or the "[s]pecific design of rectal balloon catheter for locating/supporting prostate during radiation therapy with Polyzen's Balloon Process Technology." 2008 DCA ¶¶ 2.e, 6.a (original emphasis omitted and emphasis added). "Design" means, among other definitions, "a preliminary sketch or outline . . . showing the main features of something to be executed," or "the drawing up of specifications as to structure, forms, positions, materials . . . in the form of a layout for setting up, building, or

13

fabrication." Webster's Third New International Dictionary 611–12 (1993). The Balloon Process Technology, which paragraph 2.e of the 2008 DCA expressly incorporates into the RadiaDyne Product, includes "Polyzen's PU film welded balloon technology . . . designed to articulate desired shape and profile of balloons for various applications." Id. ¶ 2.d.

[D.E. 142] 7–8. On August 7, 2015, this court resolved Polyzen's motion for reconsideration concerning Polyzen's breach-of-contract claim and again discussed the '497 patent and the 2008 DCA. The court wrote:

> The relevant contractual language in the 2008 DCA states that "RadiaDyne Product will remain the propert[y] of RadiaDyne." 2008 DCA [D.E. 109-16] 4 (paragraph 6.a). "Remain" means "to continue unchanged in form, condition, status, or quantity" or "continue to be." Webster's Third New International Dictionary 1919 (1993). "Will remain" arguably falls into a grey zone between the strong operative language of "does hereby grant," which unambiguously creates a present interest, and the future-focused language of "will be assigned," which creates only an equitable interest and not legal title. Cf. Roche, 583 F.3d at 841 (noting that a promisee "might have gained certain equitable rights" against the inventor where the contract contained an agreement to assign); Arachnid, 939 F.2d at 1581 ("Although an agreement to assign in the future inventions not yet developed may vest the promisee with equitable rights in those inventions once made, such an agreement does not by itself vest legal title to patents on the inventions in the promisee."). The most natural reading, however, creates a present legal interest in RadiaDyne in an exclusive license. "Will remain" suggests that the RadiaDyne Product always has been and continues to be the property of RadiaDyne; there was no additional right that needed to be assigned when the '497 patent application was filed and when the '497 patent issued. Thus, the 2008 DCA created by operation of law an exclusive license for RadiaDyne to the claims of the '497 patent covered by the definition of RadiaDyne Product. See Roche, 583 F.3d at 842 (noting that a present assignment creates a legal title in the patent "no later than the [patent] application's filing date"); Tilak Shah 30(b)(6) Dep. [D.E. 132-1] 192 (Polyzen filed its provisional patent application on September 25, 2007). With the automatic issuance of an exclusive license, Polyzen did not breach the terms of the 2008 DCA because it transferred to RadiaDyne, to the extent legally possible, the patent rights that the 2008 DCA created in RadiaDyne.

> Here, there is a genuine issue of material fact as to the scope of the '497 patent and whether the 2008 DCA required Polyzen to assign the '497 patent to RadiaDyne or grant an exclusive license to specific claims of that patent. If the 2008 DCA required Polyzen to grant an exclusive license, the 2008 DCA also created that license by operation of law, thereby avoiding the breach of contract that the court previously determined occurred. Thus, the court grants Polyzen's motion for reconsideration [D.E. 146] and denies RadiaDyne's motion for partial summary

14

judgment on its breach of contract claim [D.E. 112].

[D.E. 165] 6–7 (emphasis omitted).

Under the 2008 DCA, RadiaDyne owns "RADIADYNE PRODUCT." See id. 6. This court has held and continues to believe that the claims of the '497 patent cover "RADIADYNE PRODUCT." See [D.E. 142] 8–10; [D.E. 165] 2–4; see also [D.E. 254] 21, 23–24; [D.E. 284-11] Col. 4, lines 19–54 ('497 patent). Even though this court found a genuine issue of material fact as to "whether the scope of the '497 patent is broader than the definition of RadiaDyne Product, with specific reference to claim four," [D.E. 165] 4, that issue does not change the fact that RadiaDyne and Polyzen at least jointly own the '497 patent. Simply put, Polyzen and RadiaDyne contractually allocated ownership of certain subject matter (including "RADIADYNE PRODUCT"), and Polyzen later obtained the '497 patent covering the subject matter allocated, at least in part, to RadiaDyne during the contract period. Thus, RadiaDyne is a co-owner of the '497 patent. See, e.g., Lucent Techs., Inc., 543 F.3d at 721–22; Bushberger v. Protecto Wrap Co., No. 07-CV-8, 2008 WL 725189, at *5 (E.D. Wisc. Mar. 17, 2008) (unpublished).

All co-owners of a patent must be joined as plaintiffs to establish standing for a patent-infringement claim. See, e.g., Lucent Techs., Inc., 543 F.3d at 721–22; Israel Bio-Eng'g, 475 F.3d at 1264, 1268; Ethicon, Inc., 135 F.3d at 1468; Bushberger, 2008 WL 725189, at *5. RadiaDyne did not voluntarily join Polyzen's patent-infringement claim concerning the '497 patent. Thus, the court lacks subject-matter jurisdiction over Polyzen's patent-infringement claim. See, e.g., Lucent Techs., Inc., 543 F.3d at 721–22; Israel Bio-Eng'g, 475 F.3d at 1264, 1268; Ethicon, Inc., 135 F.3d at 1468; Bushberger, 2008 WL 725189, at *5. Accordingly, the court denies RadiaDyne's motion for summary judgment and supplemental motion for summary judgment, denies Polyzen's cross-motion for summary judgment on all ownership issues, but dismisses without prejudice Polyzen's patent-

15

infringement claim. See Fed. R. Civ. P. 12(b)(1); cf. Fed. R. Civ. P. 56.[2]

In opposition to this conclusion, Polyzen makes numerous arguments in both its response in opposition to RadiaDyne's motions and Polyzen's own cross-motion for summary judgment on all ownership issues. See [D.E. 254, 266, 268, 287]. First, Polyzen argues that the February 2007 Confidentiality Agreement defeats RadiaDyne's contention that RadiaDyne at least jointly owns the '497 patent. See [D.E. 287] 8, 19–20. RadiaDyne, however, does not claim that the 2007 Confidentiality Agreement created or granted RadiaDyne's ownership rights in the '497 patent. See [D.E. 290] 4–5. Rather, RadiaDyne contends that RadiaDyne's ownership rights were created by conduct between the parties and are memorialized in the 2008 DCA. See id. Thus, Polyzen's argument fails.

Second, Polyzen argues that RadiaDyne really contends that the 2008 DCA assigned intellectual property to RadiaDyne without using the word assignment or referencing the transfer of intellectual property rights. See [D.E. 287] 12. RadiaDyne, however, does not contend that the 2008 DCA assigned or transferred patent rights. See [D.E. 290] 5–11. Rather, RadiaDyne persuasively contends that it at least jointly owns the '497 patent based on: (1) the parties' agreement in the 2008 DCA that the balloon design would remain owned by RadiaDyne, as reflected in the 2007 DCA and the 2008 DCA's definitions of "RADIADYNE PRODUCT" as encompassing the balloon design; (2) Polyzen's subsequent application for and procurement of the '497 patent that covers "RADIADYNE PRODUCT"; and, (3) the legal effect of Lucent's "holding that when a party patents subject matter that it previously agreed would be owned or shared with another party, that other party

<hr>

[2] Alternatively, even if the summary-judgment standard applied to RadiaDyne's motion, the court would grant summary judgment in favor of RadiaDyne under Rule 56. See Fed. R. Civ. P. 56. The court reaches this conclusion after looking at the record in the light most favorable to Polyzen and drawing all reasonable inferences in Polyzen's favor. See Matsushita, 475 U.S. at 587–88.

owns or co-owns the resulting patent." Id. 5; see Lucent Techs., Inc., 543 F.3d at 717–22; Israel Bio-Eng'g, 475 F.3d at 1264, 1268; Ethicon, Inc., 135 F.3d at 1468; Bushberger, 2008 WL 725189, at *5.

Third, Polyzen argues that Lucent is distinguishable. See [D.E. 287] 5–23. Although Polyzen correctly notes that the agreements between Polyzen and RadiaDyne did not have the identical "New Work" clause (including the reference to joint ownership) described in Lucent, the claims of the '497 patent are directed to the specific design of the medical balloon device within the definition of "RADIADYNE PRODUCT." See [D.E. 270] 8–12; cf. [D.E. 284-11] Col. 4, lines 19–54. Moreover, the 2008 DCA makes clear that "RADIADYNE PRODUCT" will remain the property of RadiaDyne. As such, this case falls within Lucent and Bushberger. See [D.E. 290] 6–7.

Fourth, Polyzen argues that Waterman v. Mackenzie, 138 U.S. 252 (1891), and its progeny defeat RadiaDyne's standing argument because Waterman teaches that the owner of a patent cannot split up its ownership rights and assign different claims to different parties. See [D.E. 287] 17–23. In Waterman, however, the Supreme Court was analyzing transactions that occurred after the patent issued. See Waterman, 138 U.S. at 255–61. Here, in contrast to Waterman, this court is analyzing joint ownership of the '497 patent based on events that took place before the '497 patent issued and whether those events created at least joint ownership when the '497 patent issued. See Lucent Techs., Inc., 543 F.3d at 720–21; Bushberger, 2008 WL 725189, at *5. Thus, Lucent controls, and Waterman and its progeny do not.

Finally, the factual question concerning "whether the scope of the '497 patent is broader than the definition of 'RADIADYNE PRODUCT,' with specific reference to claim 4," [D.E. 165] 4, does not legally change whether RadiaDyne at least jointly owns the '497 patent. See Lucent Techs., Inc., 543 F.3d at 721–22; Bushberger, 2008 WL 725189, at *5. Even if a jury were to determine that

17

claim 4's scope was broader than "RADIADYNE PRODUCT" and included subject matter unrelated to the balloon design, Lucent teaches that the '497 patent still would at least be jointly owned by Polyzen and RadiaDyne. See Lucent Techs., Inc., 543 F.3d at 717–22; see also Israel Bio-Eng'g, 475 F.3d at 1264, 1268; Ethicon, Inc., 135 F.3d at 1468; Bushberger, 2008 WL 725189, at *5.

In sum, RadiaDyne at least jointly owns the '497 patent, and RadiaDyne does not consent to Polyzen's patent-infringement claim against RadiaDyne in this action. Accordingly, the court denies RadiaDyne's motion for summary judgment and supplemental motion for summary judgment, denies Polyzen's cross-motion for summary judgment on all ownership issues, but dismisses without prejudice Polyzen's patent-infringement claim for lack of subject-matter jurisdiction. See Fed. R. Civ. P. 12(b)(1); cf. Fed. R. Civ. P. 56. Because the court has considered and denied Polyzen's cross-motion for summary judgment on all ownership issues, the court dismisses as moot Polyzen's motion for leave to file a cross motion [D.E. 247].

III.

The court now resolves numerous motions in limine. In light of the court's ruling dismissing without prejudice Polyzen's patent-infringement claim, the court grants the following motions in limine involving evidence relevant to Polyzen's patent-infringement claim: (1) Polyzen's motion in limine to exclude lawyer witnesses [D.E. 180]; (2) RadiaDyne's motion in limine to exclude evidence regarding allegations of invalidity or improper inventorship of RadiaDyne's patent portfolio [D.E. 181]; (3) RadiaDyne's motion in limine to exclude the testimony of Polyzen's technical expert Len Czuba [D.E. 189]; and (4) Polyzen's motion in limine to exclude evidence concerning RadiaDyne's patent portfolio and Polyzen's purported assignment of the '497 patent in suit to RadiaDyne [D.E. 210].

18

## A.

Polyzen moves to exclude portions of the testimony of RadiaDyne's technical expert Michael Foreman, specifically the portions of Foreman's proposed testimony concerning custom and practice as to ownership of intellectual property, use of non-disclosure agreements, and "structural integrity of prototypes and support of damages testimony." See [D.E. 179] 1–3. In support, Polyzen argues that the first two topics are not technical subjects and that Foreman has not conducted any studies or analysis to support his "business" opinions. See id. 2–3. Polyzen also argues that the third topic is vague, that "structural integrity of prototypes" has nothing to do with this action, and that Foreman is not qualified to testify about damages. See id. 3–4. RadiaDyne responds that Foreman is qualified as an expert, that his opinions on the customs and practices in the industry as to ownership of intellectual property and the use of non-disclosure agreements are relevant and reliable as to both Polyzen's patent-infringement claim and each party's breach-of-contract claim, that his prototype testimony is relevant and reliable as to Polyzen's alleged patent damages, and that Foreman permissibly may provide testimony underlying the basis for RadiaDyne's damages expert's opinion. See [D.E. 204] 10–26.

Rule 702 of the Federal Rules of Evidence governs the admission of expert testimony. See Fed. R. Evid. 702. The proponent of the expert testimony must establish its admissibility by a preponderance of evidence. Cooper v. Smith & Nephew, Inc., 259 F.3d 194, 199 (4th Cir. 2001). A district court has broad latitude in making its determination on the admissibility of proposed expert testimony. United States v. Gastiaburo, 16 F.3d 582, 589 (4th Cir. 1994).

Rule 702 provides that expert testimony is appropriate when it "will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Rule 702 further provides that a witness qualified as an expert may be permitted to testify if: (1) the testimony "is

19

based upon sufficient facts or data"; (2) the testimony is "the product of reliable principles and methods"; and, (3) the witness "has reliably applied the principles and methods to the facts of the case." Id. Courts have distilled Rule 702's requirements into two crucial inquiries: whether the proposed expert's testimony is relevant and whether it is reliable. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141 (1999); Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 589 (1993); United States v. Forrest, 429 F.3d 73, 80 (4th Cir. 2005). The trial court must carry out the special gatekeeping obligation of ensuring that expert testimony meets both requirements. Kumho Tire, 526 U.S. at 147.

To be relevant, the proposed expert testimony must be helpful to the trier of fact. See Daubert, 509 U.S. at 591–92. "Testimony from an expert is presumed to be helpful unless it concerns matters within the everyday knowledge and experience of a lay juror." Kopf v. Skyrm, 993 F.2d 374, 377 (4th Cir. 1993); accord Koger v. Norfolk S. Ry. Co., No. 1:08-0909, 2010 WL 692842, at *1 (S.D. W. Va. Feb. 23, 2010) (unpublished). "[T]he test of reliability is flexible and the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination." United States v. Wilson, 484 F.3d 267, 274 (4th Cir. 2007) (emphasis and quotations omitted); see Kumho Tire, 526 U.S. at 141–42. A witness may qualify to render expert opinions in any one of the five ways listed in Rule 702: knowledge, skill, experience, training, or education. See Kumho Tire, 526 U.S. at 147. When a party challenges an expert's qualifications, "'the test for exclusion is a strict one, and the purported expert must have neither satisfactory knowledge, skill, experience, training nor education on the issue for which the opinion is proffered.'" Kopf, 993 F.2d at 377 (quoting Thomas J. Kline, Inc. v. Lorillard, Inc., 878 F.2d 791, 799 (4th Cir. 1989)).

Other factors that may bear on the reliability of the expert's testimony include (1) whether

20

a theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) whether a technique has a high known or potential rate of error and whether there are standards controlling its application; and, (4) whether the theory or technique enjoys general acceptance within the relevant community. Kumho Tire, 526 U.S. at 149–50; Daubert, 509 U.S. at 593–94; United States v. Crisp, 324 F.3d 261, 265–66 (4th Cir. 2003).

"In making its initial determination of whether proffered testimony is sufficiently reliable, the court has broad latitude to consider whatever factors bearing on validity that the court finds to be useful; the particular factors will depend upon the unique circumstances of the expert testimony involved." Westberry v. Gislaved Gummi AB, 178 F.3d 257, 261 (4th Cir. 1999) (citing Kumho Tire, 526 U.S. at 150–52). When proposed expert testimony pertains to damages, the testimony should be excluded when it "consists of an array of figures conveying a delusive impression of exactness in an area where a jury's common sense is less available than usual to protect it." Tyger Constr. Co. v. Pensacola Constr. Co., 29 F.3d 137, 145 (4th Cir. 1994) (quotations and citations omitted); see Boucher v. U.S. Suzuki Motor Corp., 73 F.3d 18, 21 (2d Cir. 1996) (per curiam) ("Where lost future earnings are at issue, an expert's testimony should be excluded . . . if it is based on unrealistic assumptions regarding plaintiff's future . . . prospects.").

The court grants Polyzen's motion in limine in part and excludes Foreman from testifying concerning Polyzen's patent-infringement claim. Such testimony is irrelevant because Polyzen's patent-infringement claim is no longer in the case. To the extent that RadiaDyne seeks to have Foreman testify concerning custom and ownership of intellectual property, the use of non-disclosure agreements, and to provide an underlying basis for the testimony of RadiaDyne's damages expert, and to the extent that Foreman's testimony relates to the claims and counterclaims remaining in the case, Polyzen's objection goes to the weight, not the admissibility, of Foreman's opinions. On the

21

current record, the court is satisfied that Foreman's proposed testimony about claims and counterclaims other than the now-dismissed patent-infringement claim are relevant and sufficiently reliable. Of course, at trial, the court will have a much better sense of how Foreman's expert testimony fits with the claims and counterclaims remaining in the case. Accordingly, Polyzen's motion in limine to exclude portions of the testimony of RadiaDyne's technical expert Michael Foreman is granted in part and denied in part.

B.

As for RadiaDyne's motion in limine to partially exclude the expert testimony of Polyzen's damages expert Graham Rogers [D.E. 185], RadiaDyne seeks to exclude: (1) Rogers's testimony that Polyzen was damaged by RadiaDyne's alleged trade-secret misappropriation; (2) Rogers's testimony that Polyzen was damaged by RadiaDyne's alleged breach of contract; and, (3) Rogers's testimony that Polyzen may recover patent damages before the July 11, 2011 issue date of the '497 patent. See id. Polyzen responds that RadiaDyne's objections go to the weight of the evidence, not the admissibility, and that RadiaDyne simply presents a different theory of liability and damages concerning Polyzen's breach-of-contract claim, trade-secret-misappropriation claim, and patent-infringement claim. See [D.E. 202] 2–9.

Because the court has dismissed Polyzen's patent-infringement claim, the court grants RadiaDyne's motion in limine to exclude Rogers from testifying that Polyzen may recover patent-infringement damages before the July 11, 2011 issue date of the '497 patent. As for RadiaDyne's motion in limine to exclude Rogers's testimony that Polyzen suffered damages from RadiaDyne's alleged trade-secret misappropriation and alleged breach of contract, RadiaDyne argues that Rogers's testimony is entirely disconnected from this case in light of this court's summary judgment ruling concerning trade-secret misappropriation and breach of contract and is, therefore, not relevant or

22

reliable. See [D.E. 186] 2.

As for Rogers's testimony concerning damages arising from RadiaDyne's alleged trade-secret misappropriation, Rogers opines that RadiaDyne's alleged trade-secret misappropriation unjustly enriched RadiaDyne by $3,336,262.34. See [D.E. 186-2] 6. At Rogers's deposition and in his report, however, Rogers did not identify any specific trade secret of Polyzen at issue in this case. See, e.g., [D.E. 186-3] 61–62, 65–66, 80–82, 86–87, 95–96, 110. Rogers also failed to explain how (if at all) RadiaDyne or Dielectrics used any alleged Polyzen trade secret to make balloons for RadiaDyne. See id. 65–66. Furthermore, Rogers's expert report reveals that he did not even review the single document that might contain the Polyzen trade secret that remains at issue in this case. Compare [D.E. 186-2] 8–9 (listing document that Rogers reviewed in forming his opinions and failing to list DIE 297), with [D.E. 142] 13–18 (court's summary judgment ruling limiting Polyzen's trade-secret-misappropriation claim to Note 1 of DIE 297). Rather, Rogers's report and testimony assume that RadiaDyne's incremental profits from switching suppliers from Polyzen to Dielectrics was due solely and entirely to the alleged trade-secret misappropriation that Polyzen included in its amended complaint. [D.E. 186-3] 80–82. Moreover, Rogers admitted that he did not try to connect Polyzen's alleged unjust-enrichment damages arising from the alleged trade-secret misappropriation "in any specific way to any drawings or whether or not anything in those drawings was in the public domain at that time or whether or not there's any evidence that Dielectrics even used any of those drawings . . . because [he] assume[d] liability." Id. 124–25.

Rogers's report and testimony concerning Polyzen's trade-secret-misappropriation claim are deeply flawed in light of this court's summary judgment ruling concerning Polyzen's trade-secret-misappropriation claim. See [D.E. 142] 13–18. In that ruling, this court limited Polyzen's claim to Note 1 of DIE 279, which contains specifications "that define the depth of the three layers and,

23

crucially, the apparent materials for each layer." [D.E. 142] 14 (discussing [D.E. 109-20] DIE 279 and Tilak Shah Dep. [D.E. 113-11] 307). Rogers's report and testimony, however, do not state that the materials and thickness recited in Note 1 of DIE 279 are in any of the balloons that Dielectrics made for RadiaDyne.

Rogers's damages calculations are based on assumptions about Polyzen's trade-secret-misappropriation claim that are unconnected to Note 1 of DIE 279 and the existing evidence. As such, the evidence is irrelevant and unreliable. See, e.g., Silicon Knights, Inc. v. Epic Games, Inc., No. 5:07-CV-275-D, 2011 WL 6748518, at *13–17 (E.D.N.C. Dec. 22, 2011) (unpublished), aff'd, 551 F. App'x 646 (4th Cir. 2014) (per curiam) (unpublished). Additionally, Rogers's damages calculations are based on assumptions regarding Polyzen's "success on all of its claims that [are] no longer viable" in light of this court's summary judgment ruling. Id. at *17. "A damages model premised on a false assumption is not reliable." Id.; see Children's Broad. Corp. v. Walt Disney Co., 245 F.3d 1008, 1018 (8th Cir. 2001); Pharmanetics, Inc. v. Aventis Pharm., Inc., No. 5:03-CV-817-FL(2), 2005 WL 6000369, at *10 (E.D.N.C. 2005) (unpublished), aff'd, 182 F. App'x 267, 272–73 (4th Cir. 2006) (per curiam) (unpublished). Thus, the court grants RadiaDyne's motion in limine to exclude Rogers from testifying that Polyzen suffered damages from RadiaDyne's alleged trade-secret misappropriation.

As for Rogers's testimony concerning Polyzen's breach-of-contract claim, Rogers opines that "[i]f RadiaDyne is found liable for breach of contract, then Polyzen should receive damages based on paragraph 6.d of the 2008 DCA." [D.E. 186-2] 6. According to Rogers, the "total damages associated with RadiaDyne's breach of contract is $954,664.47 [calculated at 10% * RadiaDyne's original COGS ($9,546,644.73)]." Id.

Rogers's testimony concerning Polyzen's breach-of-contract claim ignores this court's order

24

of February 18, 2015. See [D.E. 142] 11. In that order, this court held that "paragraph 6.d applies only if Polyzen and RadiaDyne 'enter[] into a manufacturing and supply agreement, and . . . Polyzen is unable or unwilling to supply RadiaDyne its volume requirement at a reasonable transfer price.'" Id. (alterations in original). The court also held that the "record shows that Polyzen and RadiaDyne did not enter into a manufacturing and supply agreement, thus obviating the application of paragraph 6.d." Id. Accordingly, Rogers's opinion on contract damages is not tied to the facts of this case and is irrelevant and unreliable. See, e.g., Silicon Knights, Inc., 2011 WL 6748518, at \*13–17; Pharmanetics, Inc., 2005 WL 6000369, at \*10–11. Thus, the court grants RadiaDyne's motion in limine to exclude Rogers from testifying that Polyzen suffered damages from RadiaDyne's alleged breach of contract.

## C.

As for RadiaDyne's motion to exclude evidence [D.E. 213], RadiaDyne asks the court to exclude Len Czuba's exhibits concerning claim construction (Polyzen exhibits 60 and 61) and infringement (Polyzen exhibits 64 and 65), Graham Rogers's March 14, 2014 expert report on damages (Polyzen exhibit 134), Polyzen's December 28, 2012 infringement contentions (Polyzen exhibit 63), "RadiaDyne Chart re Infringement Prostate Positioning Device" and "RadiaDyne Chart Re Infringement Alatus" (Polyzen exhibits 66 and 67), "Document #116-3 in 11-cv-006622" (Polyzen exhibit 68), "Briefing on inventorship w/exhibits" (Polyzen exhibit 30), Steven Hultquist's declaration concerning inventorship (Polyzen exhibit 25), Tilak Shah's January 6, 2012 "declaration I" (Polyzen exhibit 31), Tilak Shah's January 6, 2012 "declaration II" (Polyzen exhibit 32), Tilak Shah's March 6, 2015 "declaration III" (Polyzen exhibit 33), Chris Strom's January 6, 2012 declaration (Polyzen exhibit 34), Len Czuba's declaration concerning inventorship (Polyzen exhibit 52), "Physical Hearing Exhibits re Inventorship" or "Time Line and prototypes prepared by Chris

25

Strom and entered into evidence at hearing" (Polyzen exhibits 35 and 169), and Steven Hultquist's testimony concerning inventorship of any patent, infringement of the '497 patent-in-suit, the PTO's reasons for issuing the '497 patent-in-suit, or any aspect of the preparation of any application that matured into the '497 patent-in-suit as to which Hultquist did not have personal knowledge. See [D.E. 214] 6–15 (quotation omitted).

Polyzen responds and agrees that the expert reports are inadmissible at trial, that briefing and infringement contentions are inadmissible at trial, and that declarations are inadmissible if a witness is available to testify. See [D.E. 227] 1–2. As for the demonstrative exhibits at Polyzen exhibits 35 and 169, Polyzen argues that these exhibits are not demonstrative exhibits prepared for trial, but are the "actual prototypes that Polyzen made in 2008" under contract between Polyzen and RadiaDyne. See id. 2–3. Thus, Polyzen asks the court to reserve ruling on the admissibility of Polyzen exhibits 35 and 69 until trial. Id. 3. As for Steven Hultquist's testimony, Polyzen contends that he is a fact witness, that he will offer testimony based on his personal knowledge, and that he will not provide opinion testimony. See id.

The court agrees that the expert reports are inadmissible hearsay. See, e.g., Jones ex rel. United States v. Mass. Gen. Hosp., 780 F.3d 479, 494–95 (1st Cir. 2015); Sigler v. Am. Honda Motor Co., 532 F.3d 469, 486 (6th Cir. 2008). To the extent the expert reports concern Polyzen's patent-infringement claim, they also are inadmissible because they are irrelevant. Likewise, the court agrees that Polyzen's briefing and infringement contentions are inadmissible. See, e.g., Duha v. Agrium, Inc., 448 F.3d 867, 879 (6th Cir. 2006); Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prods., LLC, No. 1:CV-09-1685, 2010 WL 4537002, at *23 (M.D. Pa. Nov. 3, 2010) (unpublished). Similarly, the court agrees that the six declarations referenced in RadiaDyne's motion in limine are hearsay and are inadmissible for the truth of the matter asserted. See Fed. R. Evid.

26

801(c); <u>Fox v. Leland Volunteer Fire/Rescue Dep't, Inc.</u>, No. 7:12-CV-354-FL, 2015 WL 1058954,

*5 (E.D.N.C. Mar. 11, 2015) (unpublished). The declarations also are irrelevant to the extent they

concern Polyzen's patent-infringement claim. Thus, the court grants RadiaDyne's motion to exclude

Polyzen exhibits 25, 30, 31, 32, 33, 34, 52, 60, 61, 63, 64, 65, 66, 67, 68, 134.

As for Polyzen exhibits 35 and 169 and the testimony of Steven Hultquist, to the extent the

evidence solely concerns Polyzen's patent-infringement claim, the evidence is irrelevant.

Nonetheless, because the evidence may concern the remaining claims and counterclaims, the court

will reserve ruling until trial on the admissibility of Polyzen exhibits 35 and 169 and Hultquist's

testimony. Thus, RadiaDyne's motion to exclude evidence is granted in part and denied in part.

IV.

In sum, the court DENIES RadiaDyne's motion [D.E. 248] and supplemental motion [D.E.

268] for summary judgment concerning Polyzen's patent-infringement claim, DENIES Polyzen's

cross-motion for summary judgment on all ownership issues [D.E. 255], but DISMISSES without

prejudice Polyzen's patent-infringement claim for lack of subject-matter jurisdiction. <u>See</u> Fed. R.

Civ. P. 12(b)(1); <u>cf.</u> Fed. R. Civ. P. 56. Additionally, the court DISMISSES as moot Polyzen's

motion for leave to file a cross motion [D.E. 247]. Furthermore, the court GRANTS Polyzen's

motion in limine to exclude lawyer witnesses [D.E. 180], GRANTS RadiaDyne's motion in limine

to exclude evidence regarding allegations of invalidity or improper inventorship of RadiaDyne's

patent portfolio [D.E. 181], GRANTS RadiaDyne's motion in limine to exclude the testimony of

Polyzen's technical expert Len Czuba [D.E. 189], and GRANTS Polyzen's motion in limine to

exclude evidence regarding RadiaDyne's patent portfolio and purported assignment of the '497

patent in suit to RadiaDyne [D.E. 210]. Moreover, the court GRANTS in part and DENIES in part

Polyzen's motion in limine to exclude portions of the testimony of RadiaDyne's technical expert

27

Michael Foreman [D.E. 179], GRANTS RadiaDyne's motion in limine to partially exclude the testimony of Polyzen's damages expert Graham Rogers [D.E. 185], and GRANTS in part and DENIES in part RadiaDyne's motion to exclude evidence [D.E. 213].

SO ORDERED. This **23** day of September 2016.

JAMES C. DEVER III
Chief United States District Judge